WEBBER et al. v. REYNOLDS.

(Supreme Court, Appellate Division, Second Department. July 11, 1898.)

NEW TRIAL—IMPEACHMENT OF VERDICT—AFFIDAVITS OF JURORS.
　　Upon a motion to set aside a verdict, affidavits of the jurymen are admissible to show that their answer to a specific question submitted to them by the court was due to an entire misunderstanding of its meaning, owing to the ambiguity of its phraseology.

Appeal from trial term, Kings county.

Action by Marvelle C. Webber and Frank V. Johnson, executors, against Charles G. Reynolds.　From an order setting aside a verdict and granting a new trial, defendant appeals.　Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Alfred E. Mudge, for appellant.
Alexander H. Van Cott, for respondents.

GOODRICH, P. J.　The plaintiffs, as executors of Marvelle W. Cooper, on June 26, 1896, made a contract with the defendant by which the plaintiffs, as such executors, agreed to sell, and the defendant agreed to buy, 24 lots in Brooklyn, for the sum of $2,300 per lot, aggregating $55,200, the deed to be delivered on July 20th. At the time of the contract the defendant gave a check for $250 on account of the purchase price, and this check was deposited in his bank by the plaintiffs' agent, but the payment was stopped, and before the 20th of July the defendant notified the plaintiffs that he

would not carry out the contract and take the deed, on the ground
that the plaintiffs could not convey a good marketable title.    Sub-
sequently a suit was brought to foreclose a mortgage on the prop-
erty, and it was sold at auction under the judgment for $13,500,
subject to prior mortgages thereon, amounting to $30,150, being a
difference from the contract price, of about $11,550.    At the trial,
the court, instead of requiring a general verdict, submitted two
written questions to the jury:

"First. Did the defendant, Charles G. Reynolds, unconditionally agree to
accept the contract signed by the plaintiffs?    Second. What was the value of
the 24 lots mentioned in the contract signed by the plaintiffs on July 20, 1896?
The jury answered 'Yes' to the first of said questions, and answered '$2,800
per lot' to the second of said questions."

When the verdict was rendered, the counsel for the plaintiffs
stated to the trial justice that the jury did not understand the
second question, whereupon the jury were polled, the two questions
and answers were read to the jury, and each juror answered that
the verdict was his verdict.    A motion was made by the plaintiffs
to the trial justice to set aside the verdict, on the ground that the
"jury misapprehended the direction given by the court to them, and
rendered their said verdict upon a misapprehension of such direction."
The motion was based on the affidavits of all the jurymen.    The
court granted the motion, and from the order the defendant appeals.

The plaintiffs contended that the misapprehension of the jury arose
from the fact that the second question, containing no punctuation,
was understood by the jury to mean, not what was the value of
the property on July 20, 1896, but as if it read "what was the value
of the lots in the contract which was signed on July 20, 1896."    It
is evident that the question might easily have been so understood
by the jury, provided they did not bear in mind the fact that the
contract was dated June 26th instead of July 20th.    Eleven of the
jurors made affidavits in which each stated:

"That the deponent and the jury totally misconceived the meaning of the
second question, and understood that the direction of the court to them was
to find the value of the property per lot as set forth in the contract, and which
the defendant was bound by said contract to pay the plaintiffs on the 20th
day of July, 1896; and that the deponent did not understand, nor did the jury
understand, that the court directed the jury to find the value of the property
left on the hands of the plaintiffs on the day when the deed was to be deliv-
ered and the defendant broke his contract.    Deponent further says that, had
he and the jury understood the direction of the court to be that they should
find the value of the land as left on the hands of the plaintiffs after the de-
fendant had broken his contract, deponent and said jury would have found
the said value to be the amount actually realized upon the sale of the said
property on foreclosure."

The other juryman made a similar affidavit except that he stated
that at the time in question he was of the opinion that the proper
answer to the second question was a statement of the price realized
on the foreclosure sale, but was persuaded by the other jurymen
that the proper form of answer to secure to the plaintiffs the full
value of their contract was that finally agreed upon, and that,
therefore, against his judgment, he agreed to the form of the answer
with the other jurymen, and that he and the jury intended to award

the plaintiffs the difference between the contract price and the price which the property brought on the foreclosure sale.  There were no affidavits contradicting any of these facts, and it is evident that there has been a clear miscarriage of justice.  The defendant, however, contends that the charge of the court was clear and distinct, in the following:

"The only question which you are to decide is:  What was the value of these twenty-four lots—twelve on Putnam avenue and twelve on Jefferson avenue—on July 20, 1896, the date when the contract was to be consummated and the deed delivered?"

This would undoubtedly have ended the consideration of this matter, except for the fact that the court submitted the two written questions in the form above stated, which led to the misapprehension already referred to.  It is manifest that the second question, as written, is open to misunderstanding; and it is not clear on the face of the question and answer that the former was understood and answered by the jury according to the charge of the court.  It it not at all certain that, upon the matter being brought to its attention, the court, if satisfied that there had been such misunderstanding, and that injustice had been done, might not have set aside the verdict, even without the affidavits of the jury.

In Rost v. Railroad Co., 10 App. Div. 477, 479, 41 N. Y. Supp. 1069, this court, speaking through Mr. Justice Hatch, held:

"And if the court can fairly see that * * * if the things which were done render it probable that injustice has been worked, it becomes the duty of this court to interfere, and correct the wrong, even though it be difficult or impossible to lay hand upon specific error, for the object of all trials is the accomplishment of justice.  Platt v. Munroe, 34 Barb. 291;  Barrett v. Railroad Co., 45 N. Y. 628.  And it is the duty of the court, in the disposition of legal controversies, to secure to the parties their legal rights so far as the same may practically be accomplished."

In Burhans v. Tibbits, 7 How. Prac. 21, cited with approval in Dalrymple v. Williams, 63 N. Y. 361, it was said (pages 22, 23):

"It has always been held that when a verdict is sufficient, in substance, to conclude the parties upon the issues tried, the court in which the trial is had may give it appropriate words, and, even after error brought, an appellate court may make it right by amending the transcript, and ordering the record below to be corrected.  Rockfeller v. Donnely, 8 Cow. 623.  'When the intention of the jury is manifest,' said Lord Mansfield, in Hawkes v. Crofton, 2 Burrows, 698, 'the court will set right matters of form.'  And it is laid down in Hob. 54, 'that, if the point in issue can be concluded out of the finding, the court will work the verdict into form, and make it serve.'"

And in Lowenstein v. Lombard, 2 App. Div. 610, 38 N. Y. Supp. 33, the court held that, within the phraseology of section 723 of the Code of Civil Procedure, the power was plainly conferred upon the court to correct a mistake in a verdict by increasing its amount.

The real question, however, is whether the affidavits of jurors can be received to impeach their verdict.  On this subject we are not without authority.  The first case where the question was fully considered in this state is Sargent v. ———, 5 Cow. 106.  The action

was for seduction of plaintiff's daughter, who was alleged to have had a child by the defendant. . The jury rendered a verdict for $920. A motion was made to set aside the verdict, based on the affidavits of several of the jurors, that, counsel for the plaintiff having told them in his summing up that the plaintiff was entitled to recover damages for the injury done her, and also for a sum sufficient to maintain her child, and the court not having charged them upon the subject, the jury assumed counsel's remarks to be a proper statement of the law, and had accordingly awarded the plaintiff $20 for the expense and loss of service and $900 for the support of the child till it was of an age to support itself. The court set aside the verdict upon the ground of mistake by the jury as to the principle upon which they had made up their verdict. Sutherland, J., writing the opinion, said (pages 121, 122):

"The plaintiff has produced no affidavit from any of the other jurors denying this statement. It then ·stands admitted, not that one or two jurors estimated the damages on that principle, but that it was an error common to all the jury, resulting from what they considered the implied assent of the judge to the correctness of the rules of damages as claimed by the counsel for the plaintiff. This is, in effect, equivalent to a misdirection of the judge. It is clearly the duty of the court to interfere in such a case, if the facts come properly before them. * * * I must confess that, upon the argument, I was strongly inclined to think the affidavits of the jurors were inadmissible; but, upon looking into the cases, I have come to a different conclusion. * * * I think the affidavits may be received here without impeaching the principle of either class of those cases. They are not introduced to show any impropriety in the conduct of the jurors, or that the verdict is not such as they intended, but to show a misconception of the rule of damages, as derived from the charge of the judge, taken in connection with the argument of counsel. It was natural for the jury to infer from the silence of the judge upon this point (which was the most important, and, indeed, the only, point of any difficulty in the case) his assent to the correctness of the rule of damages as laid down by the counsel. They acted upon that supposition. Their error was one into which they were led by the court. It was in the nature of a misdirection. The fact that they were so misled can be derived from no other source than the jurors themselves. If the judge had expressed the opinion which the jurors understood him to entertain, the verdict would have been set aside for a misdirection. I repeat that the affidavits impute no impropriety of conduct to the jurors, nor do they contradict the verdict as recorded. In such a case I find no authority against receiving them, and I am inclined to the opinion—though not without some hesitation—that, under the circumstances of this case, they may be safely admitted; and that the defendant, on that ground, is entitled to a new trial, as also on the ground of the newly-discovered evidence."

In Dalrymple v. Williams, supra, the foreman of the jury by mistake announced a verdict different from that agreed to by the jury. There were two defendants, Williams and another, and the verdict was announced as against both defendants, but the jury had agreed on a verdict in favor of Williams and against the other defendant only. A motion to correct the verdict was made on the affidavits of several of the jurors, and the court (Allen, J., pp. 362, 363) said:

"If the fact alleged is properly before us, there should be no doubt either as to the right of the plaintiff to have, or the power of the court to grant, the relief demanded. It would be a reproach upon the administration of justice if a party could lose the benefit of a trial and a verdict in his favor by the mere

mistake of the foreman of the jury in reporting to the court the result of the deliberations of himself and his fellows. The power of a court of record over its records, and to make them truthful, is undoubted, and has been exercised without question. See cases cited by Judge Harris in Burhans v. Tibbitts, 7 How. Prac. 21. The question, whenever the court is asked to reform its records so as to conform to the truth, is not as to the power, but whether a case is made calling for its exercise. The material question here is whether the affidavits of the jurors can be received to show the mistake. If they were properly before the court, the fact alleged was clearly established, and is uncontradicted, and, in addition, we have the fact that the judge at the circuit was satisfied of the mistake, and that the defendant was entitled to the correction asked, else he would have denied the motion altogether, or modified the relief demanded by merely granting a new trial. * * *" Page 364: "It is in the nature of an attempt to correct a clerical mistake. Had the jury rendered a sealed verdict, and their clerk or scrivener made a mistake in reducing it to writing, a correction of the writing after it had reached the court, and been entered upon the minutes, would be no impeachment of the verdict, or of the integrity, intelligence, or action of the jury. The jury, in furnishing proof of the clerical mistake, would stand stand by their agreement, and aid in giving effect to their deliberations and determinations. * * * I am unable to see in this an infringement of the rule forbidding jurors to impeach their verdicts; neither can I perceive serious danger in any practice that may grow up under such an exception to the general rule. Applications of this character will be rare, will be made before the judge presiding at the trial, and while the whole subject is fresh in the minds of all, and never will be granted except in cases free from reasonable doubt. Something must always be trusted to the discretion of the judge. Discretion cannot be withheld in all cases because it may sometimes be abused."

It is to be noticed that the court (same page), speaking of Sargent v. ———, said that that case "went further than the court was asked to go here. Affidavits of the jury were received to show that they were misled, and adopted a principle in estimating damages not allowed by law. This was defended and approved in Ex parte Caykendoll, 6 Cow. 53." I do not find any case wherein Sargent v. ——— has been disapproved. The prevailing opinion of Judge Peckham, in Hodgkins v. Mead, 119 N. Y. 166, 23 N. E. 559, is further authority upon the same subject. The action was for a broker's commissions, there being no question as to the amount, if any, recoverable. The lower court instructed the jury that if they found for the plaintiff they were to find a specified sum. The jury brought in a sealed verdict, simply for the plaintiff. A motion to correct the verdict by inserting the sum stated was made and granted on the affidavits of several of the jurors. The court said (119 N. Y. 171, 23 N. E. 560):

"It is said that the affidavits of the jurors were obtained ex parte, and three days after the verdict was actually rendered, and that to allow such an amendment is to throw open the doors to much loose practice, and to bring questions before the court of a nature to require an investigation into the transactions or proceedings of the jury room, which can be determined only by ex parte affidavits or statements; and that, in short, to grant such an amendment would be most impolitic, and would establish a bad precedent. In following rules of practice for the due and orderly administration of the law, care should be taken that justice is not smothered by a too slavish adherence to the mere forms and technicalities of procedure."

These authorities recognize the general doctrine that the affidavits of jurymen will not usually be received to impeach their verdict, but all of them proceed upon the same principle,—that such affidavits

may be used to correct a verdict where there has been an evident error and misunderstanding resulting in a miscarriage of justice.

My attention has been called to the recent case of Dean v. Mayor, etc. (Sup.) 51 N. Y. Supp. 586, where the appellate division of the First department held that such affidavits could not be received in a case where, the jury having rendered a verdict for $18,000, a motion was made to correct the verdict by reducing it to $5,654.24, on affidavits of jurymen who swore that they intended to allow the sum of $18,000 on the account between the parties, but that it should be reduced by deducting therefrom a sum named in a certificate of the city engineer.     The distinction is clear.     There was a mistake of the jury in their estimates, and it is well settled that affidavits to set aside a verdict for such a mistake are not admissible.     In the case at bar there was no such mistake, but a misunderstanding resulting from the form of the question submitted.     The court, in Ex parte Caykendoll, 6 Cow. 53, held that such affidavits could not be received to show a mistake in making up a verdict unless the mistake was produced by circumstances passing at the trial, which are equivalent to a misdirection of the judge.     The memorandum of the trial justice in deciding the motion in the case at bar, states:

"I am convinced that the jury, by reason of the form of the question, misunderstood the direction of the court in submitting to them for their consideration the second question, and that their answer to the question did not represent the conclusion at which they had arrived."

Under these circumstances I think there is nothing in any of the authorities which forbids the use of the affidavits of jurymen, not to impeach their verdict, not to show a mistake in their estimates, not to show misconduct in the jury room, but simply to show that the written question submitted for their verdict was misunderstood by them, and believed to call for the value of the lots at the time the contract of sale was made.     The record does not contain the evidence taken at the trial as to the value of the lots on the day named in the contract for the delivery of the deed, nor at any subsequent time, except the price which the premises brought on the foreclosure sale, and this is some evidence of value.     This fact, however, may be found in the sixth paragraph of the complaint, which alleged that the premises were sold in December, 1896, under the judgment of foreclosure, for a sum of $11,550 less than the contract price, and that the defendant became the purchaser.     The answer denied that the defendant became the purchaser, but did not deny that the amount realized at the sale was correctly alleged.     We must also assume, for the purposes of this appeal, that at the trial there was other evidence of the value of the lots on July 20th sufficient to show that the value at that time and afterwards was much less than the contract price, and that there was no evidence to the contrary.     The apparent answer of the jury to the second written question was that the value at the date of the contract and the day fixed for the delivery of the deed and thereafter was unchanged, and this was an error arising from the fact that the jury understood that they were instructed to find the value of the lots at the date of the contract, and

not at any other time.   And they answered the second question accordingly.   The trial justice was of that opinion.   A similar reference to the opinion of the trial justice in Dalrymple v. Williams, supra, influenced and controlled the decision of the court of appeals in that case.

The order must therefore be affirmed.

Order affirmed, with $10 costs and disbursements.   All concur.