## JEPSON v. CROSSTOWN ST. RY.

(Supreme Court, Trial Term, Erie County.   April, 1911.)

**1. NEW TRIAL (§ 44*)—MISCONDUCT OF JUROR—PROOF.**

Plaintiff applied for a new trial on the ground of a juror's conceal-ment on his voir dire examination of his acquaintance with defendant's president and. counsel.   Plaintiff's attorney made an affidavit that he asked the juror whether he knew defendant's attorney, and that the juror answered that he knew him slightly.   Another of plaintiff's attor-neys stated that the juror on his voir dire stated that he belonged to an organization to which defendant's attorney belonged, and it was shown that the juror had been intimately acquainted with defendant's attorney for many years, that they were both sitting officers in the same Masonic lodge in 1901, and had been closely associated therein for 20 years. *Held* that, the juror having admitted that he and defendant's attorney belonged to the same organization, the extent of such relationship not having been further inquired into, his failure to state the extent thereof was not ground for a new trial, it further appearing that one of plain-tiff's attorneys had attended the same lodge and was well acquainted with the Masonic relations between the juror and the defendant's at-torney.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 80–85; Dec. Dig. § 44.*]

**2. NEW TRIAL (§ 143*)—MISCONDUCT OF JURORS—PROOF—AFFIDAVIT OF JU-RORS.**

Affidavits of jurors indicating alleged misconduct in viewing the premises and concerning occurrences in the jury room are incompetent to impeach the verdict.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 290–296; Dec. Dig. § 143.*]

**3. MUNICIPAL CORPORATIONS (§ 800*)—OBSTRUCTIONS—NUISANCE—OPERATION OF AUTOMOBILE—NEGLIGENCE.**

Where plaintiff was injured by an automobile in which he was riding striking a bundle of papers thrown into the highway from one of defend-ant's street cars, but plaintiff would not have been injured except for the fact that the automobile was running at a speed of 50 or more miles an hour, the fact that defendant created a nuisance in the highway did not render it liable, the proximate cause of the injury being the reck-less and unreasonable use of the highway by plaintiff.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1666–1671; Dec. Dig. § 800.*]

**4. NEGLIGENCE (§ 93*)—IMPUTED NEGLIGENCE—DRIVER OF AUTOMOBILE.**

Where plaintiff, who was injured in an automobile accident, rode in the machine for 1,500 feet in about 20 seconds without any remonstrance or suggestion to the driver that he stop the car or slacken its speed prior to the accident, the driver's negligence was imputed to plaintiff in so far as it affected the latter's right to recover for injuries sustained.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 147–150; Dec. Dig. § 93.*]

Action by Alfred Jepson against the Crosstown Street Railway.   On plaintiff's motion for a new trial on the minutes and on affidavits charging improper conduct of jurors.   Denied.

Hamilton Ward, for the motion.
Roscoe R. Mitchell, opposed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BROWN, J.   [1] It is a ground for a new trial that a juror was incompetent by reason of interest, relationship or otherwise, if such ground of objection was denied or concealed by the juror on proper inquiry on his voir dire examination.   The affidavit of Hamilton Ward states that he asked juror Butler on his voir dire examination whether he knew Mr. Penny, who is both president and attorney for the defendant; that the said Butler replied that he knew Mr. Penny slightly —about the same as he knew him, Ward.   Mr. Ward also states that he had no acquaintance with the said Butler, and did not know his name when he appeared upon the panel, although he might have met him in a casual way, and that such statement of the said Butler as to the slightness of his acquaintance with the said Penny was an inducing cause for allowing said Butler to sit as a juror.   The plaintiff in an affidavit says:

"Hamilton Ward, deponent's counsel herein, asked said Butler if he knew Mr. Penny, the president of, and one of the attorneys for, the defendant herein; that said Butler replied that he only knew Mr. Penny slightly; that he did not know said Penny any better than he knew said Ward."

Andrew B. Gilfillan, the attorney for the plaintiff, in an affidavit says:

"That said Butler stated in answer to questions of Hamilton Ward that he belonged to an organization that said Penny belonged to, and in that way he knew Mr. Penny, but that he knew him only slightly; that he did not know him any better than he knew said Ward; that the fact that he knew Mr. Penny would make no difference in this case, and that, of course, it ought not to."

It is further stated in the affidavit of plaintiff's attorney upon information and belief that the statements above quoted as having been made by juror Butler to Mr. Ward on such examination were untrue; that the said Butler was well and intimately acquainted with the said Thomas Penny, and had known him intimately and well for many years; that from 1893 to 1901, inclusive, the said Butler and Penny were both active sitting officers in a Masonic lodge in Buffalo, the said Butler being the senior of said Penny by one office; that in 1901 the said Butler was Master and the said Penny was Senior Warden of the said lodge; that the said Butler and the said Penny are now and have been for the past 20 years members of and closely associated in said lodge.   The sources of the information and the grounds of the belief as to such intimate relations are stated to be the published history of said Masonic lodge.

Upon the assumption that the statements above set forth were made by juror Butler to plaintiff's counsel, and that the facts exist as stated in the affidavit of plaintiff's attorney, the question is presented whether the juror denied or concealed such relations with Mr. Penny as are established in the affidavit of Mr. Gilfillan from Mr. Ward upon his voir dire examination upon proper inquiry.   It is to be observed that juror Butler did state that he belonged to an organization to which Mr. Penny belonged, and that in that way he knew Mr. Penny; that he knew Mr. Penny slightly, about the same as he knew Mr. Ward.   It cannot be said that the juror denied or concealed the fact that he and Mr. Penny from 1893 to 1901 were both active sitting officers in a Ma-

sonic lodge. When juror Butler stated that he belonged to the same organization of which Mr. Penny was a member, it would seem that it then became the subject of proper inquiry for more information as to the relations between the juror and Mr. Penny. It does not appear whether the subject of membership in the organization was volunteered by the juror or developed by plaintiff's counsel. It is quite clear that an inquiry as to what organization was referred to would have developed its name and character. The fact that Mr. Penny and the juror Butler were sitting officers in the same lodge for years is not proof that his acquaintance with Mr. Penny was of such a degree of intimacy that it was concealed by the statement of juror Butler that he knew Mr. Penny slightly, about the same as he knew Mr. Ward. The juror Butler makes an affidavit in which he states that Mr. Ward did not ask him as to his acquaintance with Mr. Penny; but, assuming that the version as given by Mr. Ward, Mr. Gilfillan, and the plaintiff of the examination of juror Butler is an acceptable one, such version must be considered in connection with the facts set forth in the affidavits of Preston M. Albro and the juror Butler, wherein it appears that Mr. Ward for years was assistant to Mr. Penny as district attorney of Erie county, has been a member of such Masonic fraternity for years, has attended the same lodge with juror Butler, and at the time of the examination of the proposed juror was acquainted with the Masonic relations between Mr. Penny and Mr. Butler, and, when Mr. Butler stated that he belonged to the same organization as Mr. Penny, it was the giving of information that disclosed all that could be fairly expected under the circumstances. I am unable to see how the conclusion can be reached that juror Butler denied or concealed his acquaintance or relation with Mr. Penny, on proper inquiry, so as to afford reasonable ground for a new trial. McGarry v. City of Buffalo, 24 N. Y. Supp. 16;[1] Fealy v. Bull, 11 App. Div. 468, 42 N. Y. Supp. 569.

[2] The alleged misconduct of jurors in viewing the premises, and the alleged occurrences in the jury room complained of, have not been established by competent evidence. It is well settled by abundant authority that affidavits of jurors will not be received to impeach their verdict. They are only competent to sustain a verdict. Weber v. Reynolds, 32 App. Div. 248, 52 N. Y. Supp. 1007; Haight v. City of Elmira, 42 App. Div. 391, 59 N. Y. Supp. 193; Buffalo v. Dickinson, 98 App. Div. 355, 90 N. Y. Supp. 268; Gans v. Met. St. Ry., 84 N. Y. Supp. 914; Thomas v. Chapman, 45 Barb. 98; Dillman v. City of New York, 58 Misc. Rep. 52, 110 N. Y. Supp. 40; Hanor v. Housel, 128 App. Div. 801, 113 N. Y. Supp. 163; Barnes v. Bijou Theater, 138 App. Div. 590, 122 N. Y. Supp. 1085; Zint v. Mulligan, 140 App. Div. 230, 124 N. Y. Supp. 1016.

[3] The jury was charged that the placing of the bundles of newspapers in the street by the defendant created a nuisance, and that the defendant became liable to plaintiff for his injuries, provided the plaintiff was in a reasonable use of the highway and the newspaper

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 70 Hun, 597.

bundles were the proximate cause of the accident; that, if the plaintiff was in an unreasonable use of the highway, then he was called upon to use ordinary care to avoid an injury by colliding with such an object in the street. It was practically conceded on the trial that the automobile collided with a bundle of papers, ran 70 or 80 feet, struck an iron trolley pole 9 inches wide and 7 inches thick, made of quarter-inch, rolled iron, breaking such pole square off 6 inches above the pavement, turned twice around after colliding with the pole, breaking the body loose from the frame, and practically destroying the automobile. It was established beyond question that this automobile, running at the rate of 20 miles an hour, could be stopped within 30 feet. It was a fair, legitimate inference for the jury that the plaintiff was thrown from the automobile by the collision with the trolley pole by reason of the terrific impact, and that, had plaintiff been going at a reasonable rate of speed, he would have received no injury from the collision with the newspapers. The fact that the defendant created a nuisance in the highway does not make it liable to one who, in a reckless and unreasonable use of the highway, is injured by the nuisance; and, while it may be that in action for damages occasioned by a nuisance the plaintiff is not obliged to prove an absence of contributory negligence, yet if it appears that the recklessness of the injured person was the proximate cause of the injuries, all authorities hold that there can be no recovery. The evidence would warrant a finding that the automobile was rushing through the street at the rate of 50 or more miles an hour, and the only wonder is that all the occupants were not instantly killed. The plaintiff, participating in such insane business, cannot be heard to say that he was not called upon to exercise any care, and that while in such unreasonable use of the highway he had a right to assume that the highway was safe.

[4] The mere fact that plaintiff rode in the automobile 1,500 feet from Delevan street to Jefferson street in something like 20 seconds, without remonstrance or even a suggestion to the driver that he stop the car or slacken its speed, places on the plaintiff all the recklessness or contributory negligence needed to sustain a finding of a jury that he was in an unreasonable use of the highway, and his failure to attempt to restrain the driver from pursuing such a madcap pace would warrant the jury in finding complete acquiescence on his part in the driver's negligence or carelessness, and render him answerable therefor.

Motion denied.