Matter of the Petition of HERBERT C. SMITH and FLORENCE FAIRBANKS DUVAL to Prove the Last Will and Testament of MARTHA M. BRASHER, Late of the County of Kings, Deceased.

(Surrogate's Court, Kings County, August, 1920.)

Trial — Surrogates' Courts — wills — verdict — jury — affidavits — evidence.

A jury in accordance with the weight of the evidence found that testatrix had testamentary capacity when her will and each of the codicils thereto were executed, and also that the will, which made provision for her only daughter, was not procured by fraud and undue influence but that the codicils revoking such provisions were. After the jury had been discharged, some of the jurors expressed to the surrogate and to counsel their regret that they had lost sight of a provision of the will for a gift over of legacies to the daughter if she contested the will, which she did. *Held,* that the separate affidavits of ten of the jurors not in explanation of but seeking to directly reverse the verdict and to find that the testatrix was unduly influenced when she made her will and was not free from restraint, could not be received, and the contestant's motion to set aside the verdict based on the jurors' affidavits will be denied.

Motion to set aside the verdict of the jury.

Smith, Weynberg & Rich (Herbert T. Ketcham, of counsel), for proponents.

Francis A. Crowe (Edward J. Connolly, of counsel), for contestant.

WINGATE, S.  The contestant moves to set aside the verdict of the jury, rendered after a trial occupying twelve days and a deliberation in the jury room of some eight hours.

The seriousness of the situation always presented when the question of disturbing the verdict of a jury arises, is here further emphasized by the fact that the motion is based mainly upon the affidavits of ten of the jurors.

The preliminary objection is made to the reception of these jurors' affidavits or their consideration upon the motion.  Numerous cases are cited by proponents for the legal propositions that affidavits of jurors, made after a verdict is rendered and the jury discharged, may not be used to impeach their verdict or to show they mistook its effect, when no overt acts were committed.  Contestant on the other hand refers to cases when affidavits of jurors have been considered in connection with verdicts rendered by them.

One of the earliest cases upon this subject is *Vaise* v. *Delaval,* 1 T. R. 11, in which Sir James Mansfield, chief judge, refused to receive such affidavits, upon the ground that they were inadmissible to impeach the jury's verdict.

In *Williams* v. *Montgomery,* 60 N. Y. 618, the Court of Appeals of this state enunciates the principle that jurors' affidavits cannot be received to impeach their verdicts, citing *Coster* v. *Merest,* 3 Br. & B. 272; *Clum* v. *Smith,* 5 Hill, 560.  In *Dalrymple* v. *Williams,* 63 N. Y. 361, the affidavits were received for the rea-

son that the mistake of the jurors took place in open court, but the court reaffirmed the rule stating: "There are reasons of public policy, why jurors should not be heard to impeach their verdicts, whether by showing their mistakes or their misconduct. Neither can they properly be permitted to declare, with a view to affect their verdict, an intent different from that actually expressed by the verdict as rendered in open court. * * * The rule is well established, and at this day rests upon well understood reasons of public policy as connected with the administration of justice, that the court will not receive the affidavits of jurymen to prove misconduct on their part, or any act done by them which could tend to impeach or overthrow their verdict. This rule excludes affidavits to show mistake or error of the jurors in respect to the merits, or irregularity or misconduct, or that they mistook the effect of their verdict and intended something different. * * * The court draw a distinction between what transpires while the jury are deliberating on their verdict, and what takes place in open court in returning their verdict, holding the statements of jurors admissible as to the latter but not as to the former."

In *Dean* v. *Mayor,* 29 App. Div. 350, all twelve of the jurors made affidavits (and, although of no great importance as affecting the principle involved, it is the fact that in the instant case two jurors make no affidavits) that they intended a certain offset should be allowed against the plaintiff's claim but the court refused to receive the affidavits, saying: "No rule is better settled than that the affidavits of jurors are not receivable to impeach their verdict; * * * for mistake or error in respect to the merits."

In *People ex rel. Nunns* v. *County Court,* 188 App. Div. 424, decided by the Appellate Division of this

department and in which Presiding Justice Jenks, writing the prevailing opinion, referred to the case of *Vaise* v. *Delaval, supra,* as a " pioneer " case, the question under consideration was a contempt of court committed by a juryman; and while it was held that the affidavits of the jurymen were receivable as to the acts of contempt, it was only because such affidavits did not in any way tend to impeach their verdict or in fact have anything to do with their verdict. Mr. Justice Jenks in his opinion states: " I venture to assert, all others in this State and, indeed, outside of it, where the rule of exclusion has been applied, will show procedure of attack upon the *verdict,* and that the witnesses or affiants were excluded, not because they were or had been jurors, but because they could not be heard to impeach their verdict  *  *  *. The verdict was not involved — not even a feature in the proceedings. The conduct of the relator bore no relation to the verdict rendered." Mr. Justice Putnam in a learned dissenting opinion, in support of the view that the affidavits were not receivable, even under the circumstances of that case, states:  " Ordinarily it is their verdict, not the discussions leading up to it, that is the essential. But if it were otherwise, the absolute privilege surrounding the jury's deliberations, as distinguished from overt acts, cannot be violated, without destroying the jury's constitutional purpose."

The general subject is also discussed in the following cases: *People* v. *Sprague,* 217 N. Y. 373; *Zint* v. *Mulligan,* 140 App. Div. 230; *Mitchell* v. *Carter,* 14 Hun, 448; *White, Corbin & Co.* v. *Jones,* 86 id. 57; *Moses* v. *Central Park, N. & E. R. R. Co.,* 3 Misc. Rep. 322; *Broadway Building Co.* v. *Saladino,* 81 id. 73.

The contestant's brief urges, however, that the motion is not based upon any theory of impeachment by the jury of its verdict (apparently conceding the

Surrogate's Court, Kings County, August, 1920.   [Vol. 113.

correctness of the rule that affidavits of jurors may not be received for that purpose), but nevertheless argues from the facts set forth in the affidavits that the case was not decided upon the facts and the evidence.

*Webber* v. *Reynolds*, 32 App. Div. 248, is cited as authority for the reception of affidavits of jurors for the purpose of correcting a verdict; but in that case the opinion pointed out that their use was to sustain the verdict, not to impeach it, saying: " These authorities recognize the general doctrine that the affidavits of jurymen will not usually be received to impeach their verdict, but all of them proceed upon the same principle, that such affidavits may be used to correct a verdict when there has been an evident error and misunderstanding resulting in a miscarriage of justice."

In the instant case there was no miscarriage of justice so far as the verdict of the jury was concerned. The verdict is in accordance with the weight of evidence.

*Kennedy* v. *Ball & Wood Co.*, 91 Hun, 197, is also cited as authority for receiving jurors' affidavits to show they reached a wrong verdict; but that case arose upon a verdict which was patently inconsistent, as the jury found a general verdict for the plaintiff and made special findings to the contrary. The decision of the court was based upon the inconsistency of the verdict, and the statements of the jurors were disregarded.

Moreover, the charge in the case at bar does not seem to have been open to the criticism directed at the charge in the *Kennedy* case.

The testatrix herein died, leaving a will and four codicils, the effect of which was to dispose of all of her property to charity, to distant relatives, to friends

and to her lawyers, and to bestow nothing upon her only daughter and grandchildren. Granted that it was a harsh, cruel and unnatural will, as counsel suggested at the trial, still, it was her will. The law gave her the right to make such disposition of her property after her death as she chose, if she kept within the limitations prescribed by law as to gifts to charity and the creation of trusts, provided she had testamentary capacity and observed the requirements of the law as to execution and publication. If she had such capacity and observed such requirements, the several instruments, taken together, must stand as her will, unless it appears from the evidence that an influence was exerted upon her at the time of the execution of these instruments so potent as to take away and overcome her power, at such times, to act freely upon her own volition.

No question of construction of the provisions of the will and codicils arose upon the trial; the only issues tried being as to execution, testamentary capacity, and undue influence.

There being direct evidence of due execution and none to the contrary, the verdict, of necessity, was directed upon this branch of the case. The circumstances surrounding the execution called for explanation, but sufficient explanation was given.

Neither the jury nor the surrogate was charged with the duty, or the responsibility, of making a new and just will for the testatrix. The sole duty of the jury was to determine from the evidence whether or not the testatrix had testamentary capacity when she executed the will and codicils and whether or not she was constrained to execute them by fraud or undue influence, and this notwithstanding the fact that great sympathy may have been aroused for the contestant in the minds of the jury.

Surrogate's Court, Kings County, August, 1920. [Vol. 113.

The verdict of the jury was that the testatrix had testamentary. capacity when each of the instruments offered for probate was executed, and this was clearly in accordance with the weight of evidence.

It was also found by the jury that the will was not the product of fraud or undue influence, but that the four codicils were.

The will contained a legacy of $10,000 to the contestant and created a $40,000 trust of which she was the life beneficiary; both of which provisions were revoked by the codicils.

After the jury had rendered their verdict, been discharged and left the jury box, some of them insisted upon expressing to counsel and to the surrogate their regret that they had lost sight of the provision in the will for a gift over of the above mentioned legacies in case the will was contested by the testatrix's daughter.

The law required the jury to pass upon the questions submitted to it undisturbed and uninfluenced either by sympathy or prejudice or by the effect of consequences which seemed to them to be likely to follow their action, and the surrogate so charged. They were called upon to decide whether or not the will and codicils were the product of fraud or undue influence, as defined in the court's charge, unguided by what the financial result would be. They decided the fact favorably to the will and unfavorably to the codicils. They also, as before stated, decided that the testatrix had testamentary capacity.

Ten of the jurors now, in separate affidavits prepared by contestant's counsel and astutely phrased to come within the language of a case cited in his brief and designed to raise one of the vital legal questions, a somewhat novel one, which came into controversy in this case upon the framing of issues to

Misc.]   Surrogate's Court, Kings County, August, 1920.

be presented to the jury, and with a reasoning varying greatly from that earlier expressed by them, and following channels of thought not easy for a mind without legal training to appreciate, seek not to explain their verdict but to directly reverse it and to find the testatrix was unduly influenced when she made her will and was not free from restraint. It does not seem that there could be a more direct attack or impeachment.

The jurors' affidavits, containing as they do a direct attack impeaching the verdict, cannot be received under the rules laid down in the authorities above cited.

Counsel for contestant has moved, in his papers, to set aside the entire verdict; but, upon the argument, urged only that so much of it as affected the questions in regard to the will, be set aside, and quite naturally, as the verdict upon the specific questions relating to undue influence in connection with the execution of the codicils, resulted in his favor.

Counsel for proponents, who were adversely affected by the answers to these questions, announced upon the argument that he made no motions with respect to the verdict.

Upon the severability of the questions of fraud and undue influence relative to the execution of the will, no new authorities are cited, and no grounds presented that were not fully considered when the issues were framed, except as to matters raised by the jurors' affidavits. These latter have already been discussed in this opinion.

The weight of all the evidence submitted sustains the verdict of the jury as to the questions upon which contestant moves to set it aside.

*Motion denied, without costs.*