L. P. TYREE, Administrator, v. GEORGE C. TUDOR et al.

(Filed 19 April, 1922.)

1. **Automobiles—Negligence—Principal and Agent—Father and Son—Recklessness of Driver—Notice to Owner—Evidence.**

Where the owner of an automobile has authorized his 16-year-old son to drive therein a young girl of about the same age to a dance in the country, and there is evidence that his reckless driving has proximately caused her death, further evidence that the son had recently thereto been convicted of reckless driving in police courts, and that the father had arranged his fine, and also the reckless driving of the son on the occasion of the death, are competent as tending to show that the father had full notice of the recklessness of the son in driving automobiles, and of his own actionable negligence in permitting his son to use his automobile at the time in question.

2. **Automobiles — Negligence — Contributory Negligence — Evidence — Guests.**

Where a young girl, something less than 16 years of age, has been killed by the reckless driving of her escort, about the same age, in returning at night from a dance, when the latter was intoxicated and racing with others on the country improved highway, striking another car and deflecting his own, while going about sixty miles an hour, through a wire fence, taking down several posts and throwing his car bottom upwards in a field, the previously expressed desire of the deceased to return at a fast speed and her desire to get home before her friend who was staying with her, so that her mother would not suppose she was riding after the dance had ended, is not sufficient to sustain the defense of contributory negligence, or bar the plaintiff's right of recovery.

3. **Same—Acquiescence.**

For a young girl riding in an automobile as a guest to have imputed to her the negligence of the driver, upon the issue of contributory negligence, there must be sufficient evidence that she had control over the machine or over the acts of the driver, and her acquiescence in the method or manner of his driving is not alone sufficient.

4. **Negligence—Contributory Negligence—Burden of Proof.**

The burden of proof of contributory negligence is upon the defendant relying thereon, and on this trial: *Held*, the evidence was insufficient.

5. **Appeal and Error—Verdict—Damages.**

The amount of the verdict for damages for the negligent killing of the plaintiff's intestate is not reviewable on appeal.

Stacy, J., dissenting.

Appeal by defendants from *Long, J.,* at September Term, 1921, of Forsyth.

This case was before the Court, 181 N. C., 215, where the facts are fully stated.

Bynum Tudor, son of the defendant George C. Tudor, at the time the plaintiff's intestate was killed in the automobile wreck, was something

TYREE *v.* TUDOR.

over 16 years of age, living with his father under his care and custody. The father was the owner of two automobiles, kept on his premises, and which he permitted his son to drive at his pleasure, sometimes alone and at other times with the family.

On 19 June, 1918, at a dance for young people at the Country Club on the concrete road three miles west of Winston, Bynum Tudor invited Ruth Tyree, the plaintiff's intestate, a young girl something under 16 years of age, to go to the dance with him. It is admitted, and was in evidence, that he first asked his father for the large car (which was the Hudson touring car), but his father directed him to take the Buick Six roadster, which was a small car owned by his father. Just before going to the dance liquor was secured by George Tudor, an elder brother of Bynum, who was also a minor in the home of his father, which was placed in the Buick roadster. On the night prior to the dance a quart of liquor was in the office of the father, George C. Tudor, and his son, George C. Tudor, Jr., stated that it was for the dance. Drinks were given from this liquor to other young men before they went to the dance, and also after their arrival at the dance Bynum Tudor, who was handing the liquor around to the boys, and his brother put some of the liquor in the punch bowl prepared by chaperones for the young people to drink, and when, during the progress of the dance, Bynum Tudor was requested by one of his friends to walk across the floor he gave as an excuse that he was too dizzy.

It is also in evidence that just prior to going to the dance, and while the young men were assembling at the drug store, Bynum Tudor, who had purchased bottles to put the liquor in, hearing an automobile backing out of an alley, made the statement that "If they outrun me tonight, damn if they have not got to go some." After the liquor at his father's house had been secured and put in the automobile, and while the young people were assembling at the drug store, Bynum Tudor driving his car along the street saw one of the young men, to whom he called, "I have got it," and taking the young man down on a back street he gave him a drink from the liquor in the car. With the liquor stored away in the automobile, he called at the home of Miss Ruth Tyree and carried her from her father's home to the dance at the Country Club. Her remains, torn, bruised, and lifeless, were brought back to this home the next day.

During the progress of the dance Bynum Tudor, who did not dance, was racing up and down the road extending from Winston to the Country Club at a speed estimated at from 50 to 60 miles an hour, sometimes racing other automobiles and sometimes motorcycles.

It is also in evidence that about a month prior to this time Bynum Tudor, driving this same car, was racing with other cars along the road from the Country Club to Winston; that two weeks prior to this time he had been indicted in Greensboro for violation of the automobile law, and

his father had compromised the indictment; that on Sunday, two days prior to this action, he again violated the automobile law by reckless driving on the street in Winston, and had been tried the following day in the police courts, and his father had paid the fine, and the very next night his father had permitted him to take the car with this young girl in it to the dance.

It is further in evidence that this dance lasted until about 1 a. m., and Bynum Tudor was one of the last to leave. In this Buick roadster, besides himself as chauffeur, was his older brother George, also a minor, and Miss Ruth Tyree. Another one of the young girls attending the dance testified that just before they started to leave for Winston she came to the car to speak to Ruth Tyree and found the fumes of liquor on him so strong that she shuddered and drew back. Bynum started back to Winston driving the car at a speed estimated by witnesses as between 50 and 60 miles per hour, with the sparks flying out from the manifold 7 or 8 inches long, passing car after car on this crowded thoroughfare, which was filled with cars coming back to the city, and in a race with Finley Horton, who immediately preceded him to the city, with whom he had made an agreement just before leaving the club to have a race. As the Tudor car approached Lovers' Lane, which was a public road extending from the Country Club, and immediately behind the high-powered car driven by Fin Horton in this race, Bynum turned too quickly in passing Martin Goodman's car striking the hub caps on the front wheel on the Goodman car, side-swiping and bending straight the bumper of that car. The Tudor car with its occupants was hurled over a barbed wire fence into an adjoining field, the car upside down, himself and brother severely injured, and with the almost lifeless body of Miss Tyree terribly disfigured hanging on the barbed wire fence. The speed at which he was running when he side-swiped the Goodman car was such that his car cut off 4 locust posts 4 to 6 inches in diameter as it was hurled into the field. The almost lifeless body of Miss Tyree hanging on the strands of the barbed wire fence, was in such a mangled condition that one of the young men fainted in attempting to remove it, and when taken to the hospital, where she died almost immediately, her body was in such a horrible condition that the hospital authorities would not permit her parents to see it.

The road was an improved highway, 50 feet wide, of which 20 feet in the center was concrete and 15 feet on each side, where the accident occurred, was a dirt road. Martin Goodman was driving on the right-hand side of the road and on the concrete near the edge. The Tudor car came up from behind without blowing the horn or giving any signal of its approach, and when it struck the Goodman car was running approximately 60 miles an hour.

Upon this record the jury answered the issues in favor of the plaintiff, and assessed the damages at $15,000. Judgment and appeal by defendants.

*O. O. Efird, Jones & Clement, and Swink & Hutchins for plaintiff.*
*Manly, Hendren & Womble, Parrish & Deal, and Holton & Holton for defendants.*

CLARK, C. J. This case was before us, 181 N. C., 215, upon facts substantially the same as in this appeal, and the Court held in an unanimous opinion that "Where the owner of an automobile has his son to operate it as his chauffeur, both for business purposes and for the comfort and pleasure of his family, and there is evidence that he has given his permission for that son, just over 16 years of age, to use it in escorting the plaintiff's intestate, a young girl of about the same age, to a dance, it is sufficient, upon the question of the agency of the son, to bind the father for negligence which proximately caused the death of the plaintiff's intestate when returning from the dance in the automobile"; also, that "It was the duty of the father not to entrust the safety of the young girl to his son unless he knew that he was careful and prudent in the operation of the machine, and he is responsible in damages for the death of the plaintiff's intestate proximately caused by his son's negligence in driving the machine while acting as an escort."

On this second trial, the evidence was much strengthened for the plaintiff by the testimony that about a month prior to the time of this occurrence the chauffeur, Bynum Tudor, had been driving this same car, racing with other cars along this same road between the Country Club and Winston-Salem; that two weeks prior to this time he had been indicted in Greensboro for violation of the automobile law, and his father, George C. Tudor, the defendant, had arranged the indictment; that on Sunday, two days prior to this occurrence, this 16-year-old son had violated the automobile laws by reckless driving on a street in Winston, and on the following day had been tried in the police court and his father, the defendant, had paid the fine. This was the very day before this lamentable occurrence. The father, therefore, had full notice of the reckless character of his son as a chauffeur, and his unfitness to be trusted in charge of an automobile, especially on an occasion of this kind involving the safety and life of a young girl.

There was, besides, on this trial, evidence of liquor being in the car, its distribution by the chauffeur and his older brother, also in the car, and the defendant's brief stresses the evidence that the chauffeur himself (though denied by him under oath) on that occasion was drinking, if not intoxicated. There was much evidence, uncontradicted, of the

disregard of the law, not only in reckless driving and speeding far in excess of that forbidden by law, but according to the brief of defendant's counsel, of a violation of law against driving an automobile while being intoxicated. For these acts of negligence the defendant was responsible both for having placed his son in charge of the car and by reason of his liability for the negligence of his agent.

The plea of contributory negligence is thus set out: "Said Bynum Tudor undertook to pass one or more of said cars and to reach the home of plaintiff's intestate in advance of her guest, and that the rate of speed at which he was driving and his effort to pass cars were due entirely to the request of plaintiff's intestate; and the said plaintiff's intestate at all times acquiesced in and approved the method and manner of driving of Bynum Tudor, and these defendants plead as contributory negligence in bar of plaintiff's recovery the aforesaid acts and conduct of plaintiff's intestate."

It is not alleged, nor is there any proof tending to show that the unfortunate victim of this accident was an employee, or had any control whatever, or attempted to exercise, by any act, any control whatever over the operation of the car. The burden was upon the defendants to sustain the plea of contributory negligence by the greater weight of the testimony, and there is a want of any evidence sufficient to be considered by the jury, who, however, have negatived it. C. S., 523; *Cogdell v. R. R.,* 132 N. C., 855 (*Walker, J.*); *Watson v. Farmer,* 141 N. C., 454; *Wright v. R. R.,* 155 N. C., 329 (*Allen, J.*). The only proof offered was the testimony of George C. Tudor, Jr., the brother of the chauffeur, that on the way home Ruth Tyree asked Bynum Tudor to "get her home in a hurry in order to get there before Miss McKinsey, because if she did not get home before Miss McKinsey did her mother would think she had been riding after the close of the dance." This was properly excluded by the judge. It did not show any control of the car, or any request for an excessive speed, or tend to show that the request was the proximate cause of the death of this young girl. It was a perfectly reasonable request, and was not competent in any way to support the charge that the deceased was responsible or that the remark caused the occurrence.

But it is said that the following evidence, which was admitted by the court, should have that effect: Govan Caldwell testified that about three-quarters of an hour before leaving the Country Club for home, while the witness and Bynum were talking in the presence of Ruth Tyree about having a race with John Casper at a very rapid rate of speed, "Ruth said she wanted to go as fast as they had been going," Bynum said, "Let's go now," to which she answered, "No, let's wait until we go home," and Bynum replied that he would run as fast as she wanted to.

That remark, which was no part of the *res gestæ, Barker v. In. Co.,* 163 N. C., 175, though the judge admitted it, and the excluded testimony that while in the car on the way home she requested Bynum to "get her home in a hurry, to get there before Miss McKinsey did, otherwise her mother would think she had been riding after the close of the dance," is all the evidence offered to place upon the head of this young girl the responsibility of being the cause of this terrible disaster! Neither the plea nor the evidence would have justified the jury to come to such a conclusion. To his credit, the boy himself did not on his oath make such assertion. On the contrary, in his testimony he swore frankly, "When I left the Country Club the reason I had for driving at the rate of speed I did was that I was going home. I wanted to pass another car—the car Miss McKinsey was in. I passed 3 or 4 cars to the best of my knowledge before I came to the Goodman car." He did not try to put the blame on the girl, but like a man said he drove fast because he wanted to pass another car.

There is no evidence that Bynum Tudor knew what car Miss McKinsey was in, and the mere request by Ruth Tyree "to get her home in a hurry" did not license Bynum Tudor to drive at the terrific speed which was a violation of law. Besides, Fin Horton testified that he and Bynum had made an agreement to race back home and Bynum had offered to bet $5 on the result.

The jury found upon the issues submitted that: (1) The plaintiff's intestate was killed by the negligence of the defendant Bynum Tudor, as alleged in the complaint; (2) that Bynum Tudor was the agent or servant of the defendant George C. Tudor at the time mentioned in the complaint; (3) that the plaintiff's intestate did not contribute to her death by her own negligence, as alleged in the answer; and assessed the damages.

The very able counsel for the defense have presented every possible exception, but we do not consider it necessary to elaborate and discuss more fully the contentions presented.

The evidence offered as to the conduct and record of Bynum on that occasion and before was not to show his general reputation or character, but that he was a reckless driver and, taken in connection with other evidence, was proof that his father knew or should have known it. In *Linville v. Nissen,* 162 N. C., 100, it is held that the father would be liable for entrusting an automobile to his son if the father knew that the son was reckless and incompetent.

The evidence of negligence of the defendant is practically uncontradicted and the reliance of the defendants is upon the defense of contributory negligence. Notwithstanding that Bynum and his brother both testified that Bynum did not drink anything on that occasion, the

brief of the defendant strenuously insists that he was intoxicated, and that the young girl was guilty of contributory negligence in that she did not know this (for there was no evidence that she did), and did not get out of the car, which was one of the last to leave, at one o'clock in the morning, three miles from home, and the defendant's brief further stressed the proposition that she was guilty of contributory negligence in view of his fast driving because she did not get out of the car (running at times 60 miles an hour), and, therefore, she and not the defendants is responsible for her death. In *Hunt v. R. R.*, 170 N. C., 442, the Court said: "It is held by the greater weight of authority that negligence on the part of the driver of an automobile will not, as a rule, be imputed to another occupant or passenger unless such other occupant is the owner or has some kind of control over the driver. This is undoubtedly the view prevailing in this State. See the learned opinion on this subject by *Douglas, J.,* in *Duval v. R. R.,* 134 N. C., 331, citing *Crampton v. Ivie,* 126 N. C., 894; both of these discussions being approved in the more recent case of *Baker v. R. R.,* 144 N. C., 37. See, also, *Bagwell v. R. R.,* 167 N. C., 611; *McMillan v. R. R.,* 172 N. C., 853." This was quoted with approval in the very recent case of *Pusey v. R. R.,* 181 N. C., 142.

In that case the defendant requested an instruction that the plaintiff should have remonstrated with the chauffeur if he was driving too fast and have declined to go with him if the driver was drinking, and if he did not it was contributory negligence. But the Court held that it was not error to refuse such instruction because "Pusey was a guest riding for the pleasure of the trip and had no control over the car and nothing to do with driving it."

It has been repeatedly held that for a person to be responsible for the operation of an automobile, he must be the owner of the car which is operated by some one under his authority and permission, or he must have control of the operation of the car, neither of which functions could be attributed to Ruth Tyree, who was a mere guest in the car which was entirely under the control of Bynum Tudor under the authority and by the permission of his father. The above proposition is sustained by unbroken authority in this State. Among other cases are *Linville v. Nissen,* 162 N. C., 95; *Taylor v. Stewart,* 172 N. C., 203; *Williams v. Blue,* 173 N. C., 452; *Clark v. Sweaney,* 175 N. C., 282; *Wilson v. Polk,* 175 N. C., 490.

In *Williams v. Blue, supra,* the Court said: "If it should turn out upon the trial that defendant Fannie A. Blue was exercising no control over the machine or chauffeur and was occupying it simply as the wife of John Blue and with his consent, then she would not be liable. As to the defendant Graham, . . . · if it should turn out upon the trial

that he did not assist in directing the operation and course of the machine at the time of the collision, he would not be liable."

Among the later cases affirming this uniform doctrine of our courts is *Parker v. R. R.,* 181 N. C., 103, where, sustaining a verdict of $45,000 for damages sustained by a lady riding in her sister's automobile where the same defense of contributory negligence was set up, the Court said: "As to the contributory negligence, the burden of which was upon the defendants, the plaintiff was not driving the automobile, but was only a guest or passenger in the car. There is no evidence that she had any control over the movements of the car, and the negligence of the driver, if there was any, cannot be imputed to the passenger," citing numerous authorities.

In 2 R. C. L., 207, it is said: "The prevailing view is that where the occupant has no control over the driver, even in a case where the relation ·of carrier and passenger does not exist, the doctrine of imputed negligence does not apply."

In view of the negligence of the father in entrusting this machine and the custody of the young daughter of a neighbor to the care of a reckless and incompetent driver, as he knew his son to be, having but recently twice obtained his discharge from the law for reckless driving, once on the very day before, and in view of the overwhelming evidence of the chauffeur's reckless conduct and violation of law on this and previous occasions, it cannot be maintained seriously that the remark of the girl in a casual conversation three-quarters of an hour before leaving in the car that she would like fast driving (but which she declined at that time), and the offered testimony, which was properly excluded, that on the way home she said she wanted the chauffeur to get home ahead of a certain other car—that these remarks were the proximate cause that this car, running perhaps 60 miles an hour, was catapulted 36 feet, by striking another car, cutting down 4 locust posts 4 to 6 inches in diameter, seriously injuring both the young men, destroying the car, and ruthlessly extinguishing the life of this bright young girl, whose safety had been entrusted to their care. This defense that *"the woman and not the man"* was to blame has been often asserted throughout the ages, but never on slighter foundation, not even on that memorable occasion when it was first pleaded by Adam. Genesis, ch. 111 :12.

The question of damages was fully discussed before the jury, and under a charge which was properly stated, following the uniform decisions of this Court. *Hill v. R. R.,* 180 N. C., 492, and cases there cited by *Walker, J.*

The amount assessed by the jury is not reviewable by us, *Benton v. R. R.,* 122 N. C., 1009; *Cook v. Hospital,* 168 N. C., 256, and if it were we could not say that the verdict of $15,000 for the untimely death of a

young girl of about 16 years of age, who was shown to possess good health, an excellent character, and more than usual ability, was excessive compensation for her death, under most distressing and painful circumstances caused by most inexcusable negligence on the part of the father and criminal negligence on the part of the son, to whose protection and care she had been confidingly entrusted by her relatives.

No error.

STACY, J., dissenting: There are several propositions of law, laid down in the opinion of the Court, with which I do not find myself in accord; and, hence, I am constrained to state briefly the reasons for my dissent.

At the outset it should be observed that the sufficiency of the plea of contributory negligence is challenged, for the first time, in the opinion of the Court. At no stage of the case, either here or below, has it been questioned by any of the parties. Furthermore, giving a liberal construction to the allegations of the answer, which we are required to do under C. S., 535, I think the plea is fully adequate and entirely sufficient. *Brewer v. Wynne,* 154 N. C., 471; *McNinch v. Trust Co., ante,* 33.

"The uniform rule prevailing under our present system is that, for the purpose of ascertaining the meaning and determining the effect of a pleading, its allegations shall be liberally construed, with a view to substantial justice between the parties. This does not mean that a pleading shall be construed to say what it does not, but that if it can be seen from its general scope that a party has a cause of action or defense, though imperfectly alleged, the fact that it has not been stated with technical accuracy or precision will not be so taken against him as to deprive him of it. *Buie v. Brown,* 104 N. C., 335. As a corollary of this rule, therefore, it may be said that a complaint cannot be overthrown by a demurrer unless it be wholly insufficient. If in any portion of it, or to any extent, it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleading will stand, however inartificially it may have been drawn, or however uncertain, defective, or redundant may be its statements, for, contrary to the common-law rule, every reasonable intendment and presumption must be made in favor of the pleader. It must be fatally defective before it will be rejected as insufficient." *Blackmore v. Winders,* 144 N. C., 212.

Suppose a pedestrian upon the highway had been injured by this ill-fated car and Ruth Tyree had not been killed, can it be said and successfully maintained that she could not have been held responsible, along with the driver, for such injury, when the speed of the car at the time was "due entirely to her request"? *Clark v. Sweaney,* 175 N. C., 280;

*White v. Realty Co.,* 182 N. C., 536. This is the substance of the defendants' allegation of contributory negligence; and, if it be sufficient to render her liable in the supposed case, it ought to suffice as a plea in bar of the plaintiff's right to recover here. C. S., 523, and cases cited thereunder. So much for the sufficiency of the plea. I regard the present decision of the Court unfortunate in this respect. It will rise up to trouble us in the future.

I am also of the opinion that the evidence offered by the defendants, tending to support their plea of contributory negligence, was competent and should have been admitted by his Honor below. Its weight and credibility, of course, were matters for the consideration of the jury, and not for the Court. *Loggins v. Utilities Co.,* 181 N. C., 227. The books are full of cases sustaining recoveries where the evidence of negligence was not anything like as strong as that offered to show the contributory negligence of the deceased in the case at bar. I do not say the evidence would or should have been accepted by the jury as true, but it was entirely competent, and it was error in the court below not to have submitted it to the jury for its consideration.

It is stated in the opinion of the Court that "Gowan Caldwell testified that about three-quarters of an hour before leaving the Country Club for home, while the witness and Bynum were talking in the presence of Ruth Tyree about having a race with John Casper at a very rapid rate of speed, 'Ruth said she wanted to go as fast as they had been going,' Bynum said, 'Let's go now,' to which she answered, 'No, let's wait until we go home,' and Bynum replied that he would run as fast as she wanted to." I do not so understand the record. This evidence was excluded. The witness was permitted to give the above testimony, in the absence of the jury, and not in its presence, and this only for the purpose of incorporating it in the statement of case on appeal. No witness was allowed to testify, in the presence of the jury, as to anything said by the deceased while at the Country Club, or just before the fatal accident. All statements made by her, relating to how fast she wanted to ride or why she wanted to go at a rapid rate of speed, were carefully excluded. This evidence, as offered by the defendants, went to the very heart of their plea of contributory negligence, and it must be competent. That which is logically relevant is legally relevant, unless excluded by statutory enactment or some rule of evidence; and none has been shown here. It happens, in many cases, that the very fact in controversy is whether certain words were spoken and not whether they are true or false; and this is our case. "The law may be regarded as settled that wherever, for any reason, an extrajudicial statement is constituently relevant by reason of its bare existence, proof of it will be received." Chamberlayne on Evidence, sec. 2595; *Means v. R. R.,* 124 N. C., 574.

All statements made by the decedent a short time before starting on the fatal ride, and all utterances made by her while in the car and only a moment or so before the accident, were excluded, though the defendants offered to prove them by disinterested witnesses and persons not parties to the action. The defendants offered to show by the witness Gowan Caldwell that decedent, while at the Country Club, said she wanted to run at the same rate of speed that Bynum Tudor had been racing, to which Bynum replied: "Let's go now," and to which she said, "Let's wait until we go home." Also, they offered to prove the following by the witness Phil Cranford: "We returned from racing with John Casper, and something was said about going 60 miles per hour, and Miss Ruth said she wanted to drive 60 miles per hour, and Bynum said: 'Let's go now,' and she says, 'No, wait until we start home,' and Bynum says: 'All right.' Also, defendants offered to prove by the witness George Tudor, Jr., the following: 'Soon after leaving the Country Club she requested that Bynum get her home in a hurry in order to get home before Miss McKinsey did because if she didn't get home before Miss McKinsey did her mother would think she had been riding after the close of the dance.' "

This evidence was offered to establish the allegation of contributory negligence to the effect that Bynum Tudor's manner and method of driving the car was attributable to the direction and request of the decedent.

It was stated on the argument that his Honor excluded this evidence under authority of *Dowell v. Raleigh,* 173 N. C., 197; but, to my mind, the instant ruling is not supported by what was said in that case. There plaintiff's intestate was driving a wagon along a rough street in the city of Raleigh. The king-pin broke, throwing the wagon and driver to the ground and instantly causing his death. The question was whether the defective condition of the street or the defective condition of the wagon was the proximate cause of the injury. The trial court received evidence that decedent had said the king-pin was in a defective condition. This Court held that such declaration was inadmissible, *as an admission,* because it was not made by a party to the action or by one in privity with him, or as a declaration against interest since decedent, before the accident, had no interest to serve or to disserve.

In the *Dowell case, supra,* in effect, decedent said: "My wagon is defective." In this case decedent in effect said: "Wait until we go home to drive 60 miles per hour," and "Get me home in a hurry ahead of my guest." The Dowell utterance contained a statement of fact, while the Tyree utterance contained no statement of fact, but was, in form, a request or an entreaty. The Dowell utterance was offered to prove the truth of the matter asserted in it; the Tyree utterance was offered as

itself constituting a fact in issue. The Dowell utterance was offered as evidence of an independent fact; the Tyree utterance was offered as the fact itself and not as an admission or declaration against interest, nor as evidence of an unrelated fact. Herein lies the distinction; and it seems to me that the excluded evidence in the instant case was clearly competent.

The request of decedent, made after she and the defendant had started on their trip home and immediately before the accident, is competent for another reason. This was a part of the *res gestæ* in that it was so closely related to the accident as to form a part of its details. In the *Dowell case, supra,* the Court stated that on an examination of the cases apparently opposite it would be found that they were put upon the principle (or largely influenced by it), that the declarations, by reason of the fact that they were made at the very time of the injury, or of their being concomitant therewith in some degree, and explanatory thereof, became *pars rei gestæ.* The instant utterance or request, made, as it was, from one to three minutes before the accident, and bearing directly upon it, should have been admitted as part of the *res gestæ.*

It is stated in the opinion of the Court that Bynum Tudor did not testify that he was speeding at the request of the deceased. How could he, when his Honor had ruled that all statements made by her were incompetent? He alleges it in his answer, and made every effort to establish it by disinterested witnesses. What more could he do?

Again, in fairness to the defendants, I think it should be said that while there is some evidence tending to show that Bynum Tudor was drinking on the occasion in question, the overwhelming weight of the testimony is that he was not. It is to be regretted, however, that according to his own admission he has taken several drinks recently. This, no doubt, weakened his testimony before the jury. But it is not my province to lecture or to criticise; I am only stating both sides of the question. It also appears in the statement of the case that Bynum Tudor was racing back to the city with Fin Horton. I think this, too, is a misapprehension of the record.

In the recent case of *Langley v. Southern Ry. Co.* (S. C.), 101 S. E., 286, it was held that where an automobile driver in driving an automobile to a depot, heeded the directions of occupants who wanted to board a train, the management of the automobile was the concurrent act of driver and occupants, and the negligence of the driver in driving at excessive speed was imputed to an occupant precluding recovery from the railroad for injuries at crossing. The Court said: "The evidence is undisputed that plaintiff's wishes as to speed were respected and obeyed. Clearly, therefore, the evidence was susceptible of the inference that she was responsible for the rate of speed at which the automobile was being

run. It matters not whether she had the 'right' to control the driver, since it is not disputed that she did in fact control him."

In 20 R. C. L., p. 165, it is stated: "One riding in a car driven by another, though a mere guest and having no control over the person driving the car may be guilty of such negligence as to preclude a recovery for a personal injury resulting from negligent operation of the car, *e. g.,* if the driver, from intoxication, is in a condition which renders him incapable of operating the car with proper diligence and skill, and this fact is known or palpably apparent to one entering the car, entering or remaining in it, may be held negligence on the part of the guest; and, likewise, a guest may be held negligent who consents to stay in an automobile when the driver attempts to run it after dark without light on an unfamiliar road." *Lynn v. Goodwin,* 170 Cal., 112; L. R. A., 1915 E, 588; *Powell v. Berry,* 145 Ga., 696; L. R. A., 1917 A, 306, and note; *Rebillard v. Minneapolis R. Co.,* 216 Fed., 503; L. R. A., 1915 B, 953.

In the note appearing in Ann. Cas., 1916 E, at 268 *et seq.,* the writer says: "But the courts have declared certain conduct on the part of the occupant to be negligence as a matter of law. Thus it has been held to be negligence on the part of the occupant to fail to remonstrate with the driver when he is engaged in reckless driving. *Jefson v. Crosstown St. Ry.,* 72 Misc., 103; 129 N. Y. S., 233. And it has been held that if the passenger was aware that the operator was carelessly rushing into danger, it was incumbent on him to take proper steps for his own safety, but when the road was strange to the passenger, and there was nothing to make him aware of approaching danger, it could not be said as a matter of law that he was negligent in failing to call the chauffeur's attention to the danger of the situation. *Thompson v. Los Angeles R. Co.,* 165 Cal., 748; 134 Pac., 809. The occupant of an automobile has been held to be guilty of contributory negligence in riding in a motor car on a dark night, without lights, over roads which neither the driver of the car nor any of the persons with him in the car were familiar. *Rebillard v. Minneapolis R. Co.,* 216 Fed., 503; 133 C. C. A., 9; L. R. A., 1915 B, 953.

"Continuing to ride in an automobile after knowledge that the chauffeur is intoxicated, has been held to show independent negligence on the part of the passenger. *Lynn v. Goodwin,* 170 Cal., 112; L. R. A., 1915 E, 588. See, also, *Pittsburg R. Co. v. Kephert* (Ind.), 112 N. E., 251. And in a case wherein it appeared that both the driver and the occupant were drunk, the occupant was held to be guilty of independent negligence. *Cunningham v. Erie R. Co.,* 137 App. Div., 506; 121 N. Y. S., 706."

There was nothing said in the case of *Pusey v. R. R.,* 181 N. C., 137, which militates against the principles announced in the cases above

cited. There plaintiff's intestate was killed because of the alleged negligence of the railroad company in maintaining a crossing in a defective or unsafe condition; the defense being that the driver of the automobile in which plaintiff's intestate was riding was driving at an excessive rate of speed, and that plaintiff's intestate was guilty of contributory negligence in failing to remonstrate with the driver and acquiescing in the rate of speed. There was no evidence that the decedent had any control over the car, or had anything to do with the driving of it, nor was there any evidence that the decedent knew that the car was being operated at an excessive rate of speed.

In the case at bar it should be borne in mind that the driver of the automobile was a boy barely sixteen years of age; that decedent was a girl of about the same age; that she was in the high school while he was only in graded school; that she was more mature than he; that a short time before they started home she, with knowledge that he had been driving at that rate of speed, stated she would like to ride sixty miles per hour, and the defendant Bynum Tudor had agreed that on the return trip he would drive at that rate of speed in accordance with her request. Moreover, after they had started home, and only a moment or so before the fatal accident, decedent requested the defendant Bynum Tudor to overtake a car that had departed ahead of them and to get her home before her own guest should reach there.

Although the decedent was not the owner of the car, and was not physically engaged in driving it, at the time of the injury, the above testimony raises a strong inference of fact that the car was being recklessly operated at her request and in accordance with her wishes.

It should also be remembered that the relation of guest and host, which existed here, was the result of an offer on the part of Bynum Tudor to take Miss Tyree to the dance, and her acceptance of that offer. Subsequently that relationship was altered, in a measure, at the request of the guest; the host agreeing to operate the car in a manner agreeable to her wishes and in accordance with her direction. The guest, therefore, by sharing and participating in the running of the car to an appreciable extent, if she really did, necessarily assumed a part of the responsibility for its operation; at least, to my mind, the evidence was sufficient to submit the question of her contributory negligence to the jury.

Contributory negligence, such as will bar a recovery, is the negligent act of a plaintiff, or plaintiff's intestate, which, concurring and co-operating with the negligent act of a defendant, or one acting for him, thereby becomes the proximate cause of the injury, or the cause without which the injury would not have occurred. The same rule of due care, which the defendant, or the one acting for him, is bound to observe, applies equally to the plaintiff or to the plaintiff's intestate; and due

care means commensurate care, under the circumstances, when tested by the standard of reasonable prudence and foresight. *O'Dowd v. Newnham* (Ga.), 80 S. E., 40. Such contributory negligence may consist in doing the wrong thing at the time and place in question, or it may result from doing nothing when something should have been done. This is the universal rule.

In answer to the suggestion contained in the majority opinion that the view herein expressed is but an effort to put the blame on "the woman and not the man," I am content to reply in the words of Leviticus (19 :15) : "Ye shall do no unrighteousness in judgment; thou shalt not respect the person of the poor, nor honor the person of the mighty; but in righteousness shalt thou judge thy neighbor."

Upon the record I think the case should be remanded for a new trial.

WALKER, J., concurring.