STACY, J., dissenting in part.
This was an action to recover damages for serious injury sustained by the plaintiff in an automobile collision near Burlington, 6 November, *Page 340 
1921. The plaintiff, Miss Wallace, and another young lady and two young men, left Raleigh to drive to Greensboro in a Pope-Hartford roadster. On their return from Greensboro, about 1 1/2 miles from Burlington, the defendant's car, driven by his son, going towards Elon College, met and collided with the car in which the plaintiff and her companions were riding, about 7:30 p. m.
The evidence of the plaintiff and witnesses is that the car in which she was riding was on the proper side of the road, which was 16 feet wide, of ample width for two cars to pass; that it was comparatively straight for some distance, and that outside of the paved part of the road there was more than three feet on either side, and this was in good condition. The defendant's son had frequently driven over this road; knew its width and condition. The plaintiff's witnesses testified that they were blinded by the bright headlights of the defendant's car, which was approaching them very rapidly, and just before it reached the car in which the plaintiff was riding, the defendant's car, which was a heavy Hudson touring car, swerved a little towards the plaintiff's car, struck it, turned it around in such way that it turned over, falling on the plaintiff and young Slater, who was driving at the time. Bishop, the other young man, was thrown clear of the car into an adjoining field. The plaintiff received very severe and painful injuries, her pelvic bone being broken in two places. The testimony of the physician gave in detail the extent and nature of her severe injuries, and the remedies he administered, and her suffering at the time and subsequently. These details are omitted, as the judgment is in favor of the defendant, which also renders it unnecessary to consider the assignments of error directed to the ruling of the court, admitting or refusing to admit testimony showing the negligence of the driver, son of the owner of the car, in bringing about the collision.
The jury found in response to the first issue that "the plaintiff was injured by the negligence of Newmer Squires, son of the defendant, L. M. Squires, as alleged in the complaint."
The second issue was as follows: "Was Newmer Squires the agent and servant of the defendant, L. M. Squires, at the time of said injury referred to in the complaint?"
The plaintiff excepted to the second issue as submitted by the court, and assigns that as error, and also excepted to the charge and to refusal of prayer to charge.
The plaintiff had also tendered as issues the following, the rejection of which constituted the eighth assignment of error, to wit:
1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? *Page 341 
2. Did the plaintiff, by her own negligence, contribute to her injury?
3. What injury, if any, is the plaintiff entitled to recover of the defendant?
Upon the verdict, judgment was rendered in favor of the defendant. Plaintiff appealed.
The plaintiff asked the court to charge that "If the jury should find from the evidence that the defendant purchased the car for the use of himself and his family, and that the defendant permitted his sons, including Newmer, to drive the said car, driving himself, his wife or his daughter, and at times permitted the said Newmer to use said car for his own pleasure, and permitted him at times to use it in his business, driving it alone, and said Newmer used it at times without the express permission of his father; that on Sunday, 6 November, 1921, after the defendant had left home, but Mrs. Squires was at home, and other members of the family, the said Newmer went to the open garage, which was unlocked, and the car was unlocked, and drove the machine out, and came to Graham and took Miss Madge Andrews and Mr. and Mrs. Cox to ride, and during the ride the collision occurred, resulting in the injury of the plaintiff, then the jury will answer the second issue `Yes.'"
The court refused to so charge, but, on the contrary, instructed the jury, at the request of the defendant: "If you should find from the evidence, and by its greater weight, that the defendant, L. M. Squires, owned the Hudson car, and that he used said car to some extent in his business, and used it also as a pleasure car for himself and his family, and at times permitted his son to use said car as a pleasure car, but that said L. M. Squires had forbidden his son to take said car, except on those occasions when his said son should ask and receive permission so to do; and if you should further find from the evidence, and its greater weight, that on the occasion referred to in the complaint in this cause, Newmer Squires, the son of the said L. M. Squires, had taken said car, without obtaining the consent and without the knowledge of his father, the said L. M. Squires, and was using the same, then I charge you to answer the second issue `No.'"
This instruction goes further than this Court has ever held in undertaking to define the liability of the father for the acts of a minor child. It requires that, before finding the second issue, that the son was the agent or servant of the defendant, that the jury must find that he was *Page 342 
driving the car at that particular time with the knowledge and express consent of his father, and that if they failed to do so, by the greater weight of the evidence, they must find that he was not acting as the agent or servant of the defendant.
In the latest utterance of this Court upon this subject (Robertson v.Aldridge, 185 N.C. 292) the law applicable is thus stated by Hoke, J., speaking for a unanimous Court: "True, it is the recognized principle that a parent is not ordinarily responsible for the torts of a minor child, solely by reason of the relationship, and that generally liability will only be imputed on some principle of agency or employment. Brittingham v.Stadiem, 151 N.C. 299. Accordingly, it has been directly held with us, in case of injury caused by negligent use of automobiles, that no recovery can be sustained when it is made to appear that the machine was being operated by the minor at the time, for his own convenience or pleasure, contrary the parent's orders or without authority from the parent, either expressed or implied. Linville v. Nissen, 162 N.C. 96; Bilyeu v. Beck, 178 N.C. 481. But it is also held in our opinions, by the great weight of authority, that where a parent owns a car for the convenience and pleasure of the family, a minor child, who is a member of the family, using the car at the time for his own purposes, with the parent's consent and approval, will be regarded as representing the parent in such use, and the question of liability for negligent injury may be considered and determined in that aspect. Clark v.Sweaney, 176 N.C. 529; Griffin v. Russell, 144 Ga. 275; Hutchins v.Haffner, 63 Col., 365; Stowe v. Morris, 147 Ky. 386; McNeal v. McKain,33 Okla. 449; Birch v. Abercrombie, 74 Wn. 486. And from this it follows, we think, that when it is made to appear that a car owned by a parent for family use is openly and habitually used by a minor child, a member of the family, such conditions will constitute evidence permitting the reasonable inference that the car is being operated by authority of the parent and for the purpose for which it was obtained. Birch v.Abercrombie, supra; Williams v. May, 173 N.C. 78; Taylor v. Stewart,172 N.C. 203."
Again quoting from the same opinion, this Court said: "Again, while our decisions hold that automobiles are not to be regarded as inherently dangerous, requiring questions of liability to be determined in that view, it is the rule approved by well-considered authority and recognized in this jurisdiction, that when an owner, parent, or other, entrusts his car to one whom he knows or has every reason to believe is incompetent or reckless and irresponsible to an extent that makes a negligent injury probable, such owner may be held liable, though the doctrine of respondeat superior is not presented (Gardner v. Solomon, 200 Ala. 115), a *Page 343 
position recognized and approved by this Court in the recent case of Tyreev. Tudor, 183 N.C. 340."
It would be too hard a burden to place upon one who was injured by the collision caused by the proximate negligence of the driver of an automobile, bought by the defendant for the family use and driven habitually by his son, to hold that, in order to fix liability upon the owner of the car, the injured person must produce testimony that at the time of the accident in which he was injured the son was driving the car without obtaining the express consent and with the knowledge of his father, as the court has here charged. Those facts are peculiarly within the exclusive knowledge of the defendant and his son; and upon the evidence in this case, in which the son had habitually used the car, driving it for the family or for his own pleasure or business, it was encumbent upon the father to show that the son had no permission at that particular time to drive the car, and it was error to charge the jury that, before they could render a verdict against the defendant, they must find that the son at the time was driving the car with the knowledge and express consent of the father. That requires a finding of an express authority, whereas, upon the facts and circumstances of this case, the jury should have been permitted to find whether, upon all the circumstances, there was an implied consent, from the use in the family and frequency with which the son had driven the car for the family or for his own use and pleasure. A mere statement that the father at some time had forbidden his son to use the car without his express permission was not conclusive evidence that he was not driving with the implied consent which might well have been drawn correctly from the custom that was shown of his frequent use of the car, and did not throw upon plaintiff the burden of proving such express permission by the greater weight of the evidence.
This instruction would enable the father, by the mere statement to his son that he could not drive the car without express permission, though driving the car habitually, to protect himself from liability, when, as a matter of fact, there is ample evidence from which the jury could, and probably should, have drawn the inference that there was an implied consent and authority on the part of the father that he should so use it.
The number and frequency of accidents which occur, entailing death or serious injuries to others from automobiles driven by minors, which could not be done without the consent of the father and owner, forbid that the father should escape liability by merely stating to his son that he could not drive the car without express permission, when it may be he was constantly and repeatedly doing that very thing, as was shown in this case, and necessarily with the knowledge of the owner of the machine. *Page 344 
If it had been shown that the minor was not permitted to drive the machine, and that he had done so entirely without the knowledge of the father, the situation would be different, but here there is evidence of implied consent, which the jury might infer from the habitual driving of the machine for the family and for his own purposes by the son, and no evidence that it was done clandestinely, as in the Nissen case.
The public safety forbids that we should go beyond the extreme conditions laid down in the Nissen case, 162 N.C. 96, where the car was taken by the minor son against the positive prohibition of the father. In this case there was ample evidence, as above stated, from which the jury was entitled to infer that, notwithstanding any prohibition, as a matter of fact the minor was habitually driving the car for the family or for his own pleasure or business.
Error.