ADAMS, J., concurring in result; STACY and CLARKSON, JJ., concurring in the concurring opinion. *Page 349 
The plaintiff was traveling north as a guest of W. A. Brundige in his automobile, over the public highway between Franklinton and Henderson. They were both strangers and had never been over this road before. For several hundred yards south of the railroad crossing at which the injury occurred the public road runs parallel to the railroad and about 40 feet from it.
The track of the defendant approaches the crossing from the south through a cut, which was some 12 to 15 feet deep, about 400 yards from the crossing, but gradually diminished to the point where there was an embankment thrown up by the defendant company, between this track and the highway, of 4 1/2 to 5 feet, extending to the crossing. On the top of this embankment, and on the bank of the cut, shrubs and bushes had been allowed to grow, thereby further obstructing from the view of a person on the highway a passing train.
The defendant's train, according to the evidence, was also traveling north and down grade at a high rate of speed, estimated by some of the witnesses at sixty miles an hour. It was out of schedule, being about an hour and a half late. There was evidence that it was making very little noise, and very little of it could be seen from the roadway, because of the cut, embankment and other obstructions, as the train approached the automobile almost directly from the rear. The automobile was traveling eighteen to twenty miles an hour, and turned abruptly to the left to cross the defendant's track, and was struck by defendant's train. There was evidence tending to show that there was no bell rung or whistle blown or other notice of approaching danger.
The plaintiff, the woman passenger, sixty-two years old, was hurled about 75 feet, both arms and one shoulder being broken, one knee-cap smashed, her skull fractured, her scalp being so badly cut that it fell over her eyes, and her nose cut and broken so that it dropped down over her mouth.
At the close of the plaintiff's testimony the defendant's motion for judgment as of nonsuit was granted, and plaintiff appealed.
Exception 1 is to the refusal of the judge to allow the plaintiff to answer the question, "Were you in a position that you could have heard the signal whistle or bell if it had been sounded?" The answer of the witness would have been "Yes." *Page 350 
Exception 5 is to the refusal of the court to permit the plaintiff to answer the question, "Were you engaged in anything that would have distracted your attention?" The answer would have been "No." This evidence was sought to be elicited as tending to show that if defendant's train had given proper warning signals as it approached the crossing, the plaintiff was not engaged in anything that would have so distracted her attention as to prevent her hearing the signals if any had been given.
In Goff v. R. R., 179 N.C. 219, this Court approved the principle laid down in Edwards v. R. R., 129 N.C. 79: "The testimony of a witness that he did not hear either the whistle or the bell, although in a position where he might reasonably have heard either, is sufficient evidence for the consideration of the jury. It tends to prove that neither the whistle nor the bell was sounded; but whether it does prove it is for them alone to decide."
The question whether the proper signals were given should have been submitted to the jury, and the answer to the questions were competent to go to the jury as tending to show negligence on the part of the defendant. The train coming up from the rear at sixty miles an hour, the engineer should have seen the automobile traveling immediately alongside the track, going in the same direction, and the engineer knew, which the occupants of the car did not know (for the testimony is that they had never been over the road before) that, a short distance ahead, the road, making a sharp turn to the left, would cross the track. It was the duty of the engineer, by proper signals, to have warned them of the rapid approach of the train, going in the same direction, and the evidence (which was excluded) that the plaintiff was in a position to have heard the signal whistle or bell, if it had been sounded or rung, and that she was not engaged in anything that would have distracted her attention, was competent for the jury to consider upon the allegation that no warning was given.
Exception 2 is that the judge permitted the plaintiff to be asked, and to answer, that she supposed the driver of the automobile would have taken precautions at the crossing if she had called his attention to it. The plaintiff, according to the evidence, was a guest of the driver of the car and had no interest in or control over it. The driver of the car is not a party to this action, and even if negligence on his part had been shown, it could not be imputed to the plaintiff. The only pertinence of the question and answer was in attempting to fix the plaintiff with the responsibility of the action of the driver. What she supposed or imagined the driver would do under these circumstances was not admissible.
"It has been repeatedly held that for a person to be responsible for the operation of an automobile, he must be the owner of the car which *Page 351 
is operated by some one under his authority and permission, or he must have control of the operation of the car." Tyree v. Tudor, 183 N.C. 346, which cities with approval Duval v. R. R., 134 N.C. 333, where the Court held that the negligence of the driver of a public conveyance is not imputable to a passenger therein unless the passenger has assumed such control and direction of the vehicle as to be practically in control thereof, and the fact that the plaintiff was riding in a buggy driven by his father, as his guest, would make no difference as to legal liability.
Exception 6 presents the same question by permitting the defendant to ask the driver of the car, and the answer, whether if Mrs. Williams, who was riding in his car, had called his attention to the fact of the railroad track, he would have looked down the track in both directions.
Exception 7 is that the court permitted the defendant to ask W. A. Brundige, the owner and driver of the automobile, "If Mrs. Williams had requested you to stop the car upon her discovery that the train was coming, would you not have endeavored to stop it?" This was intended to impute to her responsibility for the conduct of the driver, without showing that she was in control of the machine, and is also a hypothetical question, for it was not shown that she had discovered the approach of the train.
The driver of the automobile had testified that he did not remember the circumstances, and he thinks that this was due in part to the shock which he received. The testimony is that Brundige was sixty-one years old and was thrown about 90 feet by the force of the collision. The effect of this upon his mental condition was competent as an explanation of his inability to remember accurately the details of the collision, and it was error to strike it out.
In addition to the above exceptions as to the admission or rejection of testimony, we think there was error in allowing the motion of the defendant for a nonsuit, and for the refusal of the court to submit to the jury the facts in connection with the collision and the manner in which the plaintiff was injured.
There is no evidence tending to show that the plaintiff, who was a mere passenger or guest of Brundige, saw the car being driven into the zone of danger. Besides, the question of contributory negligence upon the facts of this case does not arise upon this nonsuit; for if the evidence, taken in the light most favorable for the plaintiff, was sufficient to be submitted to the jury upon the issue, the evidence, if there had been any, of contributory negligence on the part of the plaintiff could not be considered.
Tyree v. Tudor, 183 N.C. at p. 346, quotes Hunt v. R. R., 170 N.C. 442, where the Court said: "It is held by the greater weight of authority that negligence on the part of the driver of an automobile will not, as a *Page 352 
rule, be imputed to another occupant or passenger unless such other occupant is the owner or has some kind of control over the driver. This is undoubtedly the view prevailing in this State. See the learned opinion on this subject by Douglas, J., in Duval v. R. R., 134 N.C. 331, citingCrampton v. Ivie, 126 N.C. 894; both of these discussions being approved in the more recent case of Baker v. R. R., 144 N.C. 37-44." And further said that this had been approved in the then very recent case of Pusey v.R. R., 181 N.C. 142, and added the following: "It has been repeatedly held that a person, to be responsible for the operation of an automobile, must be the owner of the car which is operated by some one under his authority and permission, or he must have control of the operation of the car, neither of which functions could be attributed to Ruth Tyree, who was a mere guest in the car, which was entirely under the control of Bynum Tudor, under the authority and by the permission of his father. The above proposition is sustained by unbroken authority in this State. Among other cases are Linville v. Nissen, 162 N.C. 95; Taylor v. Stewart, 172 N.C. 203;Williams v. Blue, 173 N.C. 452; Clark v. Sweaney, 175 N.C. 282;Wilson v. Polk, 175 N.C. 490."
In Williams v. Blue, supra, the Court said: "If it should turn out upon the trial that defendant, Fannie A. Blue, was exercising no control over the machine or chauffeur, and was occupying it simply as the wife of John Blue and with his consent, then she would not be liable. As to the defendant, Graham, . . . if it should turn out upon the trial that he did not assist in directing the operation and course of the machine at the time of the collision, he would not be liable." That case then quotes Parker v.R. R., 181 N.C. 103, as affirming this uniform doctrine of our courts sustaining a verdict of $45,000 for damages sustained by a lady riding in her sister's automobile, where the same defense of contributory negligence was set up. The Court said: "As to the contributory negligence, the burden of which was upon the defendants, the plaintiff was not driving the automobile, but was only a guest or passenger in the car. There is no evidence that she had any control over the movements of the car, and the negligence of the driver, if there was any, cannot be imputed to the passenger," citing numerous authorities. This is exactly the facts in the present case.
Tyree v. Tudor also cites 2 R. C. L., 207: "The prevailing view is that where the occupant has no control over the driver, even in a case where the relation of carrier and passenger does not exist, the doctrine of imputed negligence will not apply."
However, in this case, as already stated, upon a nonsuit sufficient appears to carry the case to the jury, and there is no evidence whatever *Page 353 
of contributory negligence on the part of the plaintiff, who was a mere passenger in a closed automobile driven by Brundige.
Of course, if there is not sufficient evidence of the negligence of the defendant to carry the case to the jury (which is the sole question on this nonsuit), and the negligence of the driver was the sole proximate cause of the collision, the passenger in the automobile who sustains injury cannot recover of the railroad. Parker v. R. R., supra; Bagwell v. R. R.,167 N.C. 611. In such case there can be no liability on the part of the defendant.
Goff v. R. R., 179 N.C. 216, as already stated, cites the rule laid down in Edwards v. R. R., that the failure to hear signals is sufficient to carry the case to the jury, and it was further held: "If his (plaintiff's) view is obstructed, or his hearing the approaching train is prevented, and especially if this is done by the fault of the defendant, and the company's servants fail to warn him of its approach, and, induced by this failure of duty, which has lulled him into security, he attempts to cross the track and is injured, having used his faculties as best he could, under the circumstances, to ascertain if it was dangerous ahead, negligence will not be imputed to him, but to the company, failure to warn him being regarded as the proximate cause of any injury he received," citing Mesic v. R. R.,120 N.C. 490; Osborne v. R. R., 160 N.C. 309.
The defendant company owed to every one traveling along the public highway which will cross the defendant's tracks to maintain a safe crossing, and to warn travelers of the approach of its train to such crossing. Under all the circumstances of this case, there was certainly evidence to be submitted to the jury whether the negligence of the defendant was the proximate cause of the injury sustained. The plaintiffs were traveling an unknown road, whose crossing ahead was not known to them until they reached it and made a sharp turn to the left for that purpose. The train, which was coming up in the rear, was not known to them, whereas the driver of the train must have seen the automobile moving ahead of him along the road closely parallel to the train. The passengers in the automobile naturally would not be looking to the rear unless their attention was called to the approaching train by some signal. Their view, if they had looked in that direction, was obstructed for a part of the way by a cut, some 12 to 15 feet in depth, and even at the last moment by an embankment of 4 1/2 to 5 feet, which has since been removed, and in addition to this obstruction there was the growth on the top of the cut and embankment.
Upon the whole case, it was error for the judge, by a nonsuit, to decide that the defendant was not in anywise in fault. *Page 354 
The defendant contends that the driver of the automobile in which the plaintiff was riding was guilty of negligence, in that he failed to listen or look, and that he approached the railroad at a greater rate of speed than ten miles an hour, and failed to observe the railroad track and the cross-arm signal. The question whether there was such failure was for the jury, and also, if there was such failure, whether that or the negligence of the engine driver was the proximate cause of the injury, was for the jury. The testimony of the driver is not that he failed to see the cross-arm sign, but simply that he does not remember seeing it, and that he did not know he was about to cross the track until after the accident. The evidence is that it was a new road to him, and it was a sudden right-angle turn in the road, which placed him on the track; and then there is testimony that, owing to the shock, he remembers very little about how the collision occurred. Besides, if there is evidence of the defendant's negligence as the proximate cause, evidence, if there was such, of this plaintiff's contributory negligence cannot be considered on the appeal from a nonsuit.
This was eminently a case in which the evidence should have been submitted to the jury to find upon the issues as to the proximate cause of the negligence by which two persons were so suddenly and seriously injured and another killed while traveling along the public road. The train was traveling down grade and at a terrific speed, which is fully shown by the fact that the driver was hurled 90 feet, that the body of his wife, who was killed, was thrown 105 feet, and the lady passenger (the plaintiff) was thrown 75 feet and sustained most serious damages. And, on the other hand, is the fact that the automobile was traveling along the public road, where it had a right to be, and that in crossing the track, on the same grade, the rights of the public are not subordinate to the railroad's, but coordinate with the prior rights of the public to use their own highways, each having its duties and each bound to observe the requirements. SeeKimbrough v. Hines, 180 N.C. 285, 289, which recites, though in dissenting opinions, the rules, which were not disputed by any one, as to the relative rights of passengers and railroad companies at crossways. It may be added that, on the second appeal, in that case, after the fullest discussion, the plaintiff obtained the final judgment. Kimbrough v. R. R.,182 N.C. 234.
It is also of sufficient interest to be noted here that, by the report of the State Highway Commission, of which as an official document we take judicial notice of the 288 grade crossings by railroad tracks which formerly existed over the State highway, there now remain over the 6,063 miles of State highway in the State only 180, and the State Highway Commission assures us that twenty-two of these will be eliminated by construction now under way; though of course there is a very great *Page 355 
number of other grade crossings over public, county and local roads, furnishing opportunity for sudden death or injuries to travelers along our roads.
In many of our States, and almost altogether in foreign countries, any grade crossing of the public roads by a railroad track is absolutely forbidden. The toll of life and injury to citizens using their own public roads by collision with high-powered, fast-moving engines owned and operated for private gain is a serious detriment to the public welfare and convenience, which some day must be finally and totally eliminated in the interest of the public in this State, as in so many others.
Certainly, upon the facts of this case, it was a matter for the jury, and not for the judge, to determine whether the proximate cause of this collision, and the resulting damages sustained by the passenger in the automobile, was caused solely by her own negligence or of Brundige, or whether the proximate cause was the negligence of the defendant. The plaintiff is entitled to a
New trial.