MELZIE WATTS, WILEY V. DAVIS, MOSIE REEL, BY HER NEXT FRIEND, J. N. REEL, AND CHAS. E. TURNER v. LEWIS LEFLER AND A. F. LEFLER.

(Filed 16 December, 1925.)

**1. Evidence—Nonsuit.**

Upon a motion as of nonsuit, the evidence is construed in the light most favorable to the plaintiff; and, *Held* sufficient, in this case, to hold the father, the owner of an automobile, liable for the negligence of his son in driving the car with the implied authority of the father proximately causing a personal injury to another.

**2. Automobile—Family Car—Parent and Child—Principal and Agent— Negligence.**

Where the father of a family keeps a car for the use of his family, and permits his children to drive it, he is responsible in damages for a personal injury proximately caused to another by the negligence of his son while driving it for his own purposes, when he has theretofore customarily permitted his son, an adult living with him, to thus use the car.

APPEAL by plaintiffs from *Lane, J.,* and a jury, August Term, 1925, CABARRUS Superior Court. Reversed.

The plaintiffs each bring a separate action, four in all, to recover damages from the defendants on account of injuries and damages sustained by them. The suits were brought by reason of the alleged negligence of the defendants, Lewis Lefler and his father, A. F. Lefler. It is contended that Lewis Lefler was driving an automobile, alleged to be his father's car, for "family purpose," in a careless, reckless and negligent manner, on the public highway and running into the motor truck upon which plaintiffs were riding on the said highway. The defendants plead contributory negligence of plaintiffs. The four cases, by consent of parties, were tried together.

Facts: Lewis Lefler, about 21 years old, a son of A. F. Lefler, was driving a Hup touring car, at about 9:00 o'clock p. m., on 3 August, 1923, on the highway between Concord and Mount Pleasant, about 2 miles from Concord, when the collision took place. W. P. Mabery testified that he was sheriff of Cabarrus County at the time, he went out to where the collision occurred and went after defendant, Lewis Lefler. That he went to his father's home. That he knocked and Mr. A. F. Lefler answered, that he asked if Lewis was at home, he called and Lewis answered and Mr. Lefler recognized who it was. Mr. Lefler said: "What do you want with him?" I said, "He has had a wreck down the road and there is a crowd of people hurt and I came after him." The boy never resisted. Mr. A. F. Lefler said: *"He has wrecked my*

*Hup";* and he seemed to be worried quite a lot. That he brought the boy to town but his father did not come that night. That night or next morning he looked at the Hup touring car at Lefler Motor Company, and observed that the left-hand fender was bent up and the pin where you let the top back, that it rests on, had some blood and matter on it. That it was at least half past ten, perhaps 11 o'clock when he went to Lefler's home.

"Q. At the time A. F. Lefler said *'He has wrecked my Hup,'* you had not said anything about what car it was? Answer: No, sir.

"Q. You just said there was a wreck? Answer: Yes, sir, I said the boy has had a wreck on the road and hurt some people and I have got to take him to town, and he made this remark *'He has wrecked my Hup.'* "

Voit Barnhardt, testified, in part: "That he knew this Hup car and saw it often; that he had seen A. F. Lefler and different *ones of his family riding in it;* that he had seen *Lewis Lefler driving it."*

Buford Corzine, testified, in part: "That he was working for the Lefler Motor Company, as salesman, at the time of this collision; that he had seen A. F. Lefler riding in the Hupmobile five passenger several times; had seen him riding with his sons, his wife and youngest boy, and with Lewis Lefler one time; that he saw a five-passenger Hupmobile in the shop after this collision, next morning about 11 o'clock; the back curtain and. corner of the body was damaged some by the top carrier, the left-hand corner; the left rear fender was bent a little and the pin which holds on the top was bent a little, didn't examine it close."

H. C. McEachern, testified, in part: That he was a nephew by marriage of A. F. Lefler, he lived about 1½ miles by the road from A. F. Lefler's. That the day of the collision he helped thresh wheat at A. F. Lefler's with other members of his family, went there early in the morning and got through near sundown. Ate supper. Steve Lefler took him and his son home in his Hup car. That A. F. Lefler always had a Hup, he supposed it was his. He had a Hup he used for the family. After Steve took him home, Steve went on to Mr. Nezbit's. He saw defendant, Lewis Lefler, at his home between 8 and 9 o'clock.

"Q. How did he come there? Answer: He brought my daughter and his brother and some of my wife's kin-folks from Salisbury. Brought them *from Mr. Lefler's to my house in a Hup automobile.*

"Q. Is that the Hup that is kept there by Mr. Lefler? Answer: Yes, sir."

That he had seen that particular Hupmobile at Mr. Lefler's in the yard, but couldn't say how many times. That he had seen Mr. Lefler, and other members of his family, riding in his Hupmobile with Lewis Lefler driving, going to church, etc. That Lewis Lefler was living at his

father's at the time of this collision, was single and had made his home there all his life up to this time. . . . That he did see Lewis Lefler when he left the house of witness, and he was driving this particular Hupmobile at that time. That Steve had his car and gone. . . . Lewis Lefler and witness' son went off in the Hup together.

At the close of the evidence for plaintiff, the court below granted defendant's, A. F. Lefler's, motion for judgment as of nonsuit. The usual issues submitted in such cases, negligence, contributory negligence, and damages, were found by the jury in favor of plaintiffs and against defendant, Lewis Lefler. Defendant, Lewis Lefler, made no appeal. The main controversy is over the nonsuit as to defendant, A. F. Lefler.

Exceptions and assignments of error as to granting the nonsuit and exclusion of evidence, were duly made by plaintiffs and appeal taken to the Supreme Court. The material assignment of error and the necessary evidence will be considered in the opinion.

*J. L. Crowell and H. S. Williams for plaintiffs.*
*M. B. Sherrin and Frank Armfield for defendant A. F. Lefler.*

CLARKSON, J. The plaintiffs' assignments of error, as to the exclusion of evidence, will not be considered. The questions may not arise on another trial of the case. The main question we will consider: The court below granting the motion of defendant A. F. Lefler for judgment as in case of nonsuit at the close of the plaintiffs' evidence. C. S., 567.

The accepted rule is: "On a motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom." *Barnes v. Utility Co., ante,* 385.

In *Allen v. Garibaldi,* 187 N. C., 799, it was said: "In fact, it is frankly conceded by the defendant that the decision in *Wallace v. Squires,* 186 N. C., 339, must be overruled if his motion for judgment as of nonsuit is sustained in the present case. Without deciding whether we shall follow all that was said in that case, it is sufficient for present purposes to state that the 'family purpose' doctrine, with respect to automobiles, has been adopted as the law of this jurisdiction in several recent decisions. *Robertson v. Aldridge,* 185 N. C., 292; *Tyree v. Tudor,* 183 N. C., 340 (modified in another respect in *Williams v. R. R., ante,* p. 354); *Clark v. Sweaney,* 176 N. C., 529; *S. c.,* 175 N. C., 280; *Williams v. May,* 173 N. C., 78; *Taylor v. Stewart,* 172 N. C., 203. For an extended discussion of this doctrine, see 33 Yale Law Journal, 780, and note to *Arkin v. Page,* 287 Ill., 420, as reported in 5 A. L. R., 216."

"When a car owner gives it over to the use of his family, and permits it to be operated by the dependent members thereof, the individuals to whom it is so entrusted may properly be considered his agents in such a sense that their negligence in the use of the car is imputable to him even though the driver of the car is the adult son of the owner, who is a member of his family. In courts where the 'family purpose' rule prevails it does not seem to make any difference whether the particular trip was entirely authorized or not as where a father permitted a son to use his car and knew the son was going to take friends to a dance in a certain town the father was liable for gross negligence of the son in driving and injuring a guest although they were driving beyond the point which was their original destination. As the father allowed the son to use the car for his pleasure and it was being used for that purpose there was no departure from that purpose." The Law Applied to Motor Vehicles—Babbitt (3 ed.), 1923, sec. 1179.

Berry on Automobiles, (4 ed.), 1924, sec. 1280, says: "The rule is followed in some of the states in which the question has been decided, that one who keeps an automobile for the pleasure and convenience of himself and his family, is liable for injuries caused by the negligent operation of the machine while it is being used for the pleasure or convenience of a member of his family." Numerous cases are cited, and among them *Wallace v. Squires, supra.*

Berry, *supra,* sec. 1302, says, in part: "It makes no substantial difference as regards the liability of a parent for the acts of his child while the latter is operating an automobile kept by the parent for family use, whether the child is a minor or an adult. The question of liability does not depend upon the relation of parent and child, and the parent is under no more legal obligation to supply an automobile for the use and pleasure of a minor child than he is for the use and pleasure of an adult child. Frequently fathers continue not only to support their children after the latter have become *sui juris,* but to provide them, as members of his family, with the means of recreation and pleasure. The question is whether the child, be he an adult or a minor, was acting for the parent, was using the car for a purpose for which the parent provided it, and the evidence to support the affirmative of this issue is not different when the child is an adult than it is when the child is a minor." *Marshall v. Taylor,* 168 Mo. App., 240; *Griffin v. Russell,* 144 Ga., 275; *Hutchins v. Haffner,* 63 Col., 365; *King v. Smythe,* 140 Tenn., 217. Huddy on Automobiles (6 ed.), 1922, secs. 659-660.

There is a conflict of decisions, but we think the great weight sustains the position in the above cited authorities. The father—the owner of the automobile and the head of the family has the authority to say by whom, when and where his automobile shall be driven or he can forbid the use

altogether. With full knowledge of an instrumentality of this kind, he turns over the machine to his family for "family use." When he does this, under the "family doctrine," which applies in this State, he is held responsible for the negligent operation of the machine he has intrusted to the members of his family.

The evidence, taken in the light most favorable to plaintiff, showed that the Hupmobile, driven at the time of the collision, belonged to A. F. Lefler. He told the sheriff "He has wrecked my Hup." Lewis Lefler lived with his father at the time of the collision. When the sheriff went to arrest him, a few hours after the collision, he was at his father's home and had retired. A. F. Lefler and different members of his family rode in the Hup car. Lewis Lefler was seen driving it. A. F. Lefler rode in the car with his sons, his wife and youngest boy. The day of the collision, A. F. Lefler threshed wheat. H. C. McEachern, who married his niece and who was a neighbor, living 1½ miles by the road, went with other members of his family to help him. Went early in the morning and got through near sundown. After supper one of the sons, Steve, took McEachern home in a Hup. Lewis, the defendant, was at McEachern's home between 8 and 9 o'clock. He brought McEachern's daughter and his brother and some of McEachern's wife's kin-folks from Salisbury, from A. F. Lefler's house in a Hup automobile, kept by A. F. Lefler at his house. Lewis Lefler and McEachern's son left that night together in the Hup automobile shortly before the collision occurred.

We think, under the law, as we construe it, there was some evidence, more than a scintilla, to be submitted to the jury. The credibility and probative force is for the jury.

For the reasons given, the judgment of nonsuit is

Reversed.